Por todo lo anterior, disiento.

HIRAM GUADALUPE PÉREZ, demandante y recurrido, *v.* JOSÉ M. SALDAÑA, PRESIDENTE DE LA UNIVERSIDAD DE PUERTO RICO, demandado y peticionario.

*Número:* CE-92-611          *Resuelto:* 7 de abril de 1993

*Eric R. Ronda Del Toro* y *Emilio Pena Fonseca,* abogados del peticionario; *Luis A. Guzmán Dupont,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El demandante recurrido, Hiram Guadalupe Pérez, estudiante del Recinto de Río Piedras de la Universidad de Puerto Rico, ocupaba el cargo de representante estudiantil ante la Junta Universitaria de dicha institución educativa cuando, mediante carta de fecha 27 de abril de 1992, solicitó del Presidente de la referida Universidad que le suministrara determinada documentación *relativa a la situación fiscal de la Universidad correspondiente a un período de ocho (8) años.* En dicha carta, el recurrido no especificó razón alguna para la solicitud, así como tampoco el uso que pretendía darle a la documentación requerida ni el propósito que perseguía al así solicitarla.[1]

El Presidente de la Universidad no contestó la carta, por lo que el recurrido Hiram Guadalupe Pérez volvió a solicitar de dicho funcionario, mediante una escueta carta de fecha 24 de junio de 1992, la documentación antes mencionada. En esta segunda ocasión, el recurrido tampoco explicó la razón o el propósito de dicha solicitud. Habiendo corrido igual suerte dicha carta, el 7 de julio de 1992 la Lcda. Jéssica Rodríguez Martín, como representante legal del recurrido, le escribió al Presidente de la Universidad en solicitud de la mencionada documentación.

---

[1] La documentación solicitada fue la siguiente:

(a) Informe Auditorías Internas y Externas (estados financieros);

(b) Informes Contralor;

(c) Respuestas de U.P.R. a los informes 1 y 2;

(ch) Presupuesto oficina del Presidente—desglosado por partidas;

(d) Gastos de representación de la oficina del Presidente (gasolina, tarjetas de crédito, etc.);

(e) Gastos de viaje de la oficina del Presidente, dietas, millajes, etc.;

(f) Contratos realizados (terceras personas), listado de contratistas, proyectos y costos de proyectos;

(g) Contratos profesionales (ej. guardias, relaciones públicas, asesores, etc.);

(h) Auspicios y Coauspicios (programas, actividades, escuelas, etc.);

(i) Presupuesto general U.P.R. por partidas;

(j) Informe de compras de equipo, propiedades, carros, etc.;

(k) Personal—incremento de éste, si alguno;

(l) Salarios del personal administrativo gerencial, incluyendo bonificaciones, compensaciones, ayudas económicas, etc.;

(ll) Horas extras pagadas (a quién, por qué concepto).

En esta ocasión, se alegó que dicho funcionario universitario tenía el "deber ministerial" de proveer la información requerida, ello alegadamente al amparo de lo dispuesto por la Sec. 14.8 del Reglamento de la Universidad.

Esta tercera misiva obtuvo una reacción. Mediante carta de fecha 17 de julio de 1992, la Lcda. Sonia Dávila, en su carácter de Presidenta Interina de la Universidad de Puerto Rico, denegó expresamente la solicitud del recurrido. Adujo, en primer lugar, que la disposición reglamentaria en que se basaba la solicitud era inaplicable. Como segundo fundamento, expresó que la documentación requerida, de naturaleza fiscal, era del conocimiento del recurrido por razón de que éste, como miembro de la Junta Universitaria, "ha tenido amplia oportunidad de participar y examinar suficiente información relacionada con la Universidad, sus gastos, y condición financiera ...". Apéndice, pág. 28. A esos mismos efectos señaló, adicionalmente, que el recurrido había sido nombrado por el Consejo de Educación Superior como miembro de la Comisión Evaluadora sobre Asuntos de Matrícula, por lo que había tenido la oportunidad de examinar "amplia e intensamente toda la documentación para constatar el uso de los recaudos por concepto del aumento en las tarifas de matrícula ...". Íd. Por último, la Presidenta Interina de la Universidad expresó como fundamento adicional para la denegatoria que resultaría muy oneroso para la Universidad la búsqueda y reproducción de la voluminosa documentación solicitada, referente la misma a un período de ocho (8) años.

Merece destacarse el hecho de que el 19 de julio de 1992 se celebró una reunión extraordinaria de la Junta Universitaria con el propósito de considerar, y aprobar, el proyecto de presupuesto de la Universidad para el año fiscal 1992–1993. En dicha reunión participó el recurrido, quien fue uno de los miembros de la Junta que votó en contra de la aprobación del presupuesto. Su posición resultó derrotada.

Ello no obstante, el 26 de agosto de 1992 el Sr. Hiram Guadalupe Pérez radicó una "Solicitud de *mandamus*" ante el Tribunal Superior de Puerto Rico, Sala de San Juan. En la misma, en síntesis y en lo pertinente, alegó que, como representante de los estudiantes en la Junta Universitaria, y miembro *ex officio* del Senado Académico de la Universidad, tiene derecho a la referida documentación con el fin de "pasar juicio sobre la *situación financiera* de la Universidad de Puerto Rico con el propósito de ayudar a la *formulación del presupuesto* de dicha institución pública" (Apéndice, pág.21), y que el Presidente de la Universidad tiene el "deber ministerial" de proveer la mencionada documentación.

La parte demandada prontamente radicó una "moción solicitando desestimación y/o sentencia sumaria". Petición, pág. 1. En la misma, y en adición a alegar que el Presidente de la Universidad no tenía el deber ministerial de proveer la información requerida, se planteó que el recurso radicado no resultaba procedente en derecho por cuanto existía otro recurso adecuado y eficaz a disposición del demandante, cual era la apelación o revisión de la decisión del Presidente ante el Consejo de Educación Superior, según provisto por el Reglamento de Procedimientos Apelativos para el Sistema Universitario aprobado por el Consejo de Educación Superior en la Certificación 138, serie 1981–1982.

El tribunal de instancia, mediante "orden" de fecha 13 de octubre de 1992, declaró *sin* lugar la referida moción de desestimación y/o sentencia sumaria. En cuanto al primer planteamiento del demandado, dicho foro judicial, no obstante aceptar que la parte demandante no había citado ninguna disposición estatutaria o reglamentaria que obligara expresamente al demandado a proveer la información requerida por el demandante, determinó que en vista de lo resuelto en *Hernández Agosto v. Romero Barceló*, 112

D.P.R. 407 (1982), ello no constituía impedimento para expedir el auto de *mandamus* .

En cuanto al segundo planteamiento de la parte demandada —la existencia de otro remedio al alcance del demandante para revisar la decisión del Presidente de la Universidad— el tribunal de instancia se expresó de la siguiente manera:

> [Por] las circunstancias particulares de este caso una apelación al Consejo no necesariamente sería adecuada y eficaz. En primer lugar, la apelación al Consejo no garantiza un remedio suficientemente rápido, pues dichas apelaciones *con frecuencia* tardan cantidad de tiempo en ser resueltas. (Énfasis suplido.) Apéndice, pág. 3.

En nota al calce, añadió:

> Tomamos conocimiento judicial de ello, a la luz de nuestra repetida experiencia cuando nos llegan en revisión recursos contra decisiones del Consejo. Apéndice, pág. 3 esc. 1.

Por último, expresó el foro de instancia, en apoyo de su denegatoria, que "el derecho a la información en Puerto Rico es un derecho de orden constitucional, asunto sobre el cual los expertos no son las agencias administrativas sino los tribunales, por lo que no es particularmente importante el que se agoten los remedios administrativos antes de acudir" ante éstos. Apéndice, pág. 3.

Inconforme, el Presidente de la Universidad de Puerto Rico acudió ante este Tribunal —vía *certiorari*— en revisión de la referida "orden". En el recurso que a esos efectos radicara, el peticionario Presidente de la Universidad de Puerto Rico le imputa al foro de instancia haber errado:

> (a) .... al resolver que tomaba conocimiento judicial que una apelación al Consejo de Educación Superior no sería adecuada y eficaz y, por lo tanto, no procedía exigírsele al Demandante aquí recurrido, el agotamiento de dicho remedio administrativo disponible.

(b) ... al resolver que el Demandante tenía legitimación activa para solicitar este auto de Mandamus.

(c) ... al resolver que ante las alegaciones de la demanda tomadas de la forma mas beneficiosa al demandante, hacían que procediera el recurso de mandamus solicitado. Petición, pág. 4.

Mediante Resolución de fecha 16 de octubre de 1992 le concedimos término a la parte demandante recurrida "para mostrar causa por la cual este Tribunal no deba expedir el auto de certiorari radicado y dictar Sentencia revocatoria de la denegatoria de desestimación del Mandamus radicado ...". En auxilio de nuestra jurisdicción, se ordenó la paralización de los procedimientos a nivel de instancia hasta que otra cosa dispusiera este Tribunal.(²)

La parte demandante recurrida compareció en cumplimiento de la mencionada Resolución. En su comparecencia aduce, en primer término, que el tribunal de instancia podía tomar "conocimiento judicial" del hecho de que los recursos que se radican ante el Consejo de Educación Superior, en revisión de las decisiones del Presidente, tardan un largo período de tiempo en resolverse. Por otro lado, sostiene que la doctrina de agotamiento de remedios administrativos no puede prevalecer sobre el derecho constitucional que él tiene para obtener la información por él requerida. En tercer lugar, alega que él, como miembro individual de la Junta Universitaria, tiene capacidad jurídica (*standing*) para solicitar dicha información, y, por último, indica que él tiene gran interés en obtener la información que solicita, por las razones siguientes:

(1) él es un estudiante afectado por aumentos en la matrícula y cambios en las becas otorgadas a los estudiantes; (2) Como miembro de la Junta Universitaria tiene el deber de evaluar el presupuesto de la Universidad y por ende, la situación financiera; (3) Como ciudadano tiene el interés de saber los porme-

---

(²) Surge de la referida Resolución que el "Juez Asociado señor Alonso Alonso proveería no ha lugar al recurso radicado en esta etapa de los procedimientos" y que el "Juez Asociado señor Negrón García no intervino". Resolución de 16 de octubre de 1992.

nores de los gastos de los fondos públicos recibidos por la Universidad. Oposición a solicitud de *certiorari*, pág. 7.

## I

La doctrina de agotamiento de remedios administrativos es una norma de autolimitación judicial de carácter consuetudinario y esencialmente práctico. Mediante ella, los tribunales discrecionalmente se abstienen de revisar una actuación de una agencia gubernamental hasta tanto la persona afectada agota todos los remedios administrativos disponibles, de forma tal que la decisión administrativa refleje la posición final de la entidad estatal. *Rivera v. E.L.A.*, 121 D.P.R. 582, 593 (1988). El objetivo de la doctrina es determinar la etapa en la cual el litigante puede recurrir a los tribunales, evitando así una intervención judicial innecesaria y a destiempo que interfiera con el cauce y desenlace normal del proceso administrativo. *Delgado Rodríguez v. Nazario De Ferrer*, 121 D.P.R. 347, 354–355 (1988). Su aplicabilidad depende de la posibilidad de que, a la luz de las circunstancias del caso y pericia particular de la agencia, la intervención judicial sea o no prematura. *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716, 722–723 (1982).

En *Rivera v. E.L.A.*, ante, pág. 595, señalamos que al posponer la etapa en que el litigante puede recurrir al tribunal se logra: (1) que la agencia concernida, antes de la intervención judicial, pueda desarrollar un historial completo del asunto ante su consideración; (2) que la agencia pueda utilizar el conocimiento especializado de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad, y (3) que la agencia pueda aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamentos. Al mismo tiempo, el Poder Judicial conserva la autoridad para intervenir en los momentos en que

sea necesario para evitar un daño irreparable a una persona, facilitándose entonces la revisión judicial al tener los tribunales información más precisa sobre los fundamentos de la actuación gubernamental.

En términos generales, la determinación de la aplicación de la referida doctrina depende del balance entre los factores que operan en favor y en contra de la revisión judicial. Algunos de los factores que inclinan la balanza en favor de la preterición del requisito de agotamiento son: (1) que el dar curso a la acción administrativa haya de causar un daño inminente, material, sustancial y no teórico o especulativo; (2) que el remedio administrativo constituya una gestión inútil, inefectiva y que no ofrece un remedio adecuado, *Vda. de Iturregui v. E.L.A.*, 99 D.P.R. 488, 491 (1970), y (3) que la posposición conlleve un daño irreparable al afectado. *Vélez Ramírez v. Romero Barceló*, ante, pág. 722; Sec. 4.3 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2173.[3]

No basta, por lo tanto, con que los remedios administrativos sean lentos para que se justifique la preterición del requisito de agotamiento. *Se requiere también que éstos constituyan una gestión inútil e inefectiva o que produzcan un daño irreparable.* Es necesario, además, que quien recurre al foro judicial alegando que debe prescindirse del requisito de agotamiento de remedios administrativos, señale hechos específicos y bien definidos, y los exponga de manera tal que le permita al tribunal evaluar la defensa del Estado. *Rivera v. E.L.A.*, ante, pág. 596.

---

[3] Esta sección de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico señala:

"El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado; o cuando el requerir en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales; o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos; o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa." 3 L.P.R.A. sec. 2173.

■ Resulta pertinente señalar que recientemente, en *Mercado Vega v. U.P.R.*, 128 D.P.R. 273 (1991), reiteramos lo expresado por este Foro en *Vélez Ramírez v. Romero Barceló*, ante, a los efectos de que la impugnación constitucional de actuaciones administrativas está sujeta a la norma de agotamiento y lo resuelto en *First Fed. Savs. v. Asoc. de Condómines*, 114 D.P.R. 426, 438–439 (1983), de que "[e]l mero hecho de invocar una cuestión constitucional no margina automáticamente el proceso administrativo. Aunque es a los tribunales a quienes compete toda interpretación constitucional, ello no implica que una simple alegación al efecto excluya el foro administrativo". Expresamos, por último, en *Mercado Vega v. U.P.R.*, ante, pág. 286, que "es doctrina firmemente establecida, que para que proceda un reclamo por la violación de un derecho garantizado constitucionalmente, a los fines de eludir el cauce administrativo, es necesario que se demuestre *la existencia de un agravio de patente intensidad* que justifique desviarse del mencionado cauce". (Énfasis suplido.)

## II

■ Analizamos, en primer lugar, la validez de la determinación, del foro de instancia, de que en el caso de autos no era necesario agotar los remedios administrativos, en vista de que tomaba conocimiento judicial de que dichos remedios no serían "suficientemente rápidos". La Regla 11(A) de Evidencia, 32 L.P.R.A. Ap. IV, establece los dos (2) criterios bajo los cuales puede el tribunal tomar conocimiento judicial de hechos adjudicativos. Bajo el inciso (A)(1) de la Regla 11 (32 L.P.R.A. Ap. IV), el tribunal puede tomar conocimiento de hechos que son de conocimiento general dentro de la jurisdicción. Bajo el inciso (A)(2) de esta misma regla, 32 L.P.R.A. Ap. IV, el tribunal puede tomar conocimiento judicial de "hechos susceptibles de determinación inmediata y exacta" al recurrirse "a fuen-

tes cuya exactitud no puede ser razonablemente cuestionada". Regla 11(A) de Evidencia, ante.

En *Asoc. de Periodistas v. González*, 127 D.P.R. 704, 714–715 (1991), resolvimos que un tribunal, bajo la citada Regla 11(A)(2), puede tomar conocimiento judicial de procedimientos celebrados y de sentencias o resoluciones dictadas en cualquier causa seguida ante el mismo tribunal o en cualquier otro tribunal dentro de la misma jurisdicción, por tratarse de hechos cuya comprobación o determinación puede efectuarse de forma *exacta* e *inmediata* con un mero examen del expediente judicial. Al así hacerlo, puede entenderse que se toma conocimiento judicial de todos los incidentes acaecidos en dicho proceso, y que generalmente están recogidos en autos. *Asoc. de Periodistas v. González*, ante, pág. 715.(4)

En el caso de autos, el tribunal de instancia se limitó a decir: "[T]omamos conocimiento judicial de [que las apelaciones al Consejo *con frecuencia* tardan gran cantidad de tiempo en ser resueltas], a la luz de nuestra repetida experiencia cuando nos llegan en revisión recursos contra decisiones del Consejo". Apéndice, pág. 3 esc. 1. Esto, naturalmente, no constituye un hecho de conocimiento general, por lo que no es aplicable el inciso (A)(1) de la Regla 11, ante. Aunque así no lo señaló expresamente, el tribunal de instancia obviamente utilizó el inciso (A)(2) de la Regla 11, ante. La fuente de la cual presuntamente surge el hecho del cual se tomó conocimiento judicial no fue identificada con precisión por el tribunal de instancia. Dicho foro pudo muy bien señalar los números de los casos o los nombres de las partes de los expedientes a los que hacía referencia. A pesar de que hemos resuelto que, como regla general, los expedientes judiciales son fuentes de confiable exactitud,

---

(4) En *Asoc. de Periodistas v. González*, 127 D.P.R. 704 (1991), sostuvimos la autoridad del tribunal de instancia para tomar conocimiento judicial del hecho de que algunos de los demandantes, en un pleito civil, habían sido citados a testificar en casos criminales.

*la mejor práctica a seguir debe ser identificar los expedientes de manera que su exactitud pueda ser cuestionada.*(⁵) Acoger como suficiente la *mera* mención, por parte del juez de instancia, de que en el pasado ha atendido casos que le llevan a determinar un hecho como cierto, no distaría mucho de permitirle la inaceptable práctica de tomar conocimiento judicial de hechos adjudicativos que meramente le consten de conocimiento personal. Esta práctica es inaceptable bajo la citada Regla 11 por no cumplir con los requisitos de los incisos (A)(1) y(2), ante. Por similares razones, ha sido rechazada en la jurisdicción federal. Véase *Storm Plastics, Inc. v. United States*, 770 F.2d 148 (10mo Cir.1985).

Por otro lado, el hecho del cual toma conocimiento el tribunal de instancia no surge de manera inmediata o exacta de fuente alguna. Aun asumiendo que de *algunos* de los expedientes de recursos de revisión contra decisiones del Consejo de Educación Superior, atendidos en el pasado por el juez de instancia, surja que en ellos el procedimiento de apelación administrativo fue innecesariamente lento e ineficaz —por razón de que ello haya formado parte de las determinaciones de hecho o conclusiones de derecho, o así haya sido estipulado por las partes o porque surja del expediente con meridiana claridad— de tales expedientes se podría constatar o tomar conocimiento judicial, únicamente y en lo pertinente, de que *en tal o cual caso*, con sus *particulares hechos*, el trámite administrativo dentro del sistema universitario fue uno lento e ineficaz. Como hemos visto, el tribunal de instancia va más allá; pretende tomar conocimiento judicial *de algo que no ha ocurrido aún a base*

---

(⁵) En *Pueblo v. Flores Betancourt*, 124 D.P.R. 867 (1989), señalamos, al tomar conocimiento judicial, que al momento de ser separado de la abogacía el apelante tenía pendiente ante este Tribunal dos casos disciplinarios por hechos no relacionados con aquel recurso: una querella presentada por el Procurador General (Núm. CE-86-591), y la consideración de un informe de Conducta Profesional (Núm. MC-87-19). En *Olivieri Morales v. Pierluisi*, 113 D.P.R. 790 (1983), en que tomamos conocimiento judicial de que se habían presentado distintos recursos ante el Tribunal Supremo, acompañamos, en el esc. 1, una relación de tales casos.

*de una experiencia pasada que no ha sido constante.* Lo que ha sido, *en ocasiones*, su experiencia en el pasado, aun cuando es posible que vuelva a repetirse, no necesariamente lo habrá de ser en el futuro. Permitirle al tribunal de instancia tomar conocimiento judicial de algo que no ha ocurrido y que podría no ocurrir, es decir, que no habrá de ocurrir necesariamente, sería pretender que la capacidad cognoscitiva de los jueces es superior a la de las demás personas. No podemos aprobar la idea, o práctica, de que por el mero hecho de ser juez se tiene acceso a conocimiento que le está vedado a todo otro ser humano. Aun cuando estimamos altamente la capacidad de quienes integran nuestra Judicatura, no podemos atribuirles características sobrehumanas de pronosticar el futuro.

Resolvemos, en conclusión, que el tribunal de instancia erró al tomar conocimiento judicial, a base de los *hechos específicos* de *algunos* casos que en ocasión anterior estuvieron ante su consideración, de que los procedimientos apelativos ante el Consejo de Educación Superior son, de por sí, remedios innecesariamente lentos e ineficaces, y concluir por tal razón que procedía en el presente caso la preterición del agotamiento de los remedios administrativos. *Máxime, cuando el demandante nunca alegó hechos específicos que demostraran la urgencia de la información requerida y las razones que justificaban —en términos "del agravio de patente intensidad" sufrido por él— la preterición del cauce administrativo.*

## III

El tribunal de instancia, en su Orden de 13 de octubre de 1992, aduce como segunda razón por la cual no es necesario el agotamiento de los remedios administrativos que "el derecho a la información en Puerto Rico es un derecho de orden constitucional, [y es un] asunto sobre el cual los expertos no son las agencias administrativas sino los

tribunales". Apéndice, pág. 3. Procede señalar que, conforme las disposiciones de la Sec. 4.3 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, ante, el tribunal *podrá* relevar a un peticionario de tener que agotar los remedios administrativos "cuando se alegue la violación sustancial de derechos constitucionales". Por otro lado, nuestra jurisprudencia ha señalado que uno de los factores que inclinan la balanza hacia la preterición del requisito de agotamiento de remedios administrativos es el que el asunto en cuestión sea uno estrictamente de derecho y no requiera unos conocimientos especiales de la agencia administrativa. *Rivera v. E.L.A.*, ante, pág. 596.

En *Soto v. Srio. de Justicia*, 112 D.P.R. 477 (1982), resolvimos que, como corolario del derecho a la libertad de expresión garantizado por la Primera Enmienda de la Constitución de los Estados Unidos, L.P.R.A., Tomo 1, y por el Art. II, Sec. 4 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, toda persona tiene derecho de acceso a información gubernamental. Sin embargo, también señalamos en dicho caso que este derecho no es uno absoluto y que debe ceder en casos de imperativo interés público. *Soto v. Srio. de Justicia*, ante, págs. 489 y 493.

La instrumentalidad u organismo administrativo del Estado en posición de establecer el interés público que pueda justificar limitaciones o excepciones al derecho de acceso a información es, en este caso, el Consejo de Educación Superior de Enseñanza, organismo encargado de reglamentar la Universidad de Puerto Rico. *En ausencia de demostración de urgencia o daño inminente por parte del recurrido Hiram Guadalupe Pérez*, somos del criterio que el foro judicial *no* debe enfrascarse, *en esta etapa de los procedimientos*, en consideraciones ad hoc de cuál información debe estar disponible o no para inspección por parte del recurrido. Esa tarea le corresponde, en primera instancia, al Consejo, ya sea por vía de la promulgación de pro-

cedimientos —si no los hay— o poniendo en vigor los ya existentes, de forma que sea posible hacer el *adecuado balance de intereses* que es necesario para la determinación del alcance del derecho a la información solicitada.[6]

La solicitud de información del recurrido al Presidente de la Universidad *podría* ser irrazonable o excesiva, al punto de entorpecer las labores en la oficina de dicho funcionario o del funcionamiento general de la referida institución universitaria. El Consejo está en mejor posición de saber cuáles habrán de ser las *consecuencias prácticas* de tal petición y las limitaciones que ellas puedan significar en el uso de los recursos de la Universidad. No permitir que el proceso administrativo corra su curso sería privar al Consejo de Educación Superior de la oportunidad de formular los criterios que, desde su perspectiva, deban regir los mecanismos y procesos de divulgación de información pública en la Universidad y establecer vías de acceso a ella, sin sacrificar excesivamente los procedimientos y recursos que le permiten a la Universidad llevar a cabo su finalidad académica. Una vez agotados los remedios administrativos, y formuladas por escrito las determinaciones de rigor, el foro judicial estará en mejor posición para ejercer su función revisora y adjudicar adecuadamente la controversia, esto en caso de que al concluir el trámite administrativo no se haya resuelto satisfactoriamente el problema.

En vista de que el demandante-recurrido tiene a su al-

---

[6] Conforme a lo resuelto en *Ruiz Hernández v. Mahiques*, 120 D.P.R. 80 (1987), y estando el Consejo de Educación Superior facultado por la Ley de la Universidad de Puerto Rico, 18 L.P.R.A. sec. 602(e)(5) y(6), para actuar como organismo reglamentador y adjudicador, éste podrá, en el curso de un procedimiento cuasijudicial de apelación de una decisión del Presidente de la Universidad, *establecer normas de aplicación general que gobiernen a todas las personas situadas en similares circunstancias*. Cualquier reglamentación o formulación de criterios por parte de la Universidad *deberá satisfacer adecuadamente* los requisitos de validez constitucional establecidos en *United States v. O'Brien*, 391 U.S. 367, 377 (1968), y adoptados en nuestra jurisdicción en *Soto v. Srio. de Justicia*, 112 D.P.R. 477, 495 (1982); a saber: (1) caer dentro del poder constitucional del Gobierno; (2) propulsar un interés gubernamental importante o sustancial; (3) que el interés gubernamental no esté relacionado con la supresión de la libre expresión, y (4) que la restricción concomitante del derecho a la libre expresión no sea mayor que la esencial para propulsar dicho interés.

cance un *remedio administrativo* para revisar ante el Consejo de Educación Superior la decisión del Presidente de la Universidad de Puerto Rico; atendido lo *dispuesto por el Art. 651* del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3423;[7] en vista de la *necesidad de la pericia* del Consejo de Educación Superior para determinar el *adecuado alcance* del derecho a la información requerida *vis-à-vis* la posibilidad de *justificadas limitaciones* a ese derecho, y en vista de la *ausencia de demostración de urgencia o daño inminente* por parte del recurrido, resolvemos que no procede la acción de *mandamus* radicada en el presente caso.

Por los anteriores fundamentos *se dictará sentencia revocatoria de la orden recurrida, mediante la cual el foro de instancia denegó la desestimación de la acción de "mandamus" radicada por la parte recurrida, y, en su lugar, declarando con lugar la moción de desestimación radicada por la parte recurrente.*

El Juez Asociado Señor Negrón García emitió una opinión concurrente y disidente, a la cual se unió el Juez Asociado Señor Hernández Denton. El Juez Asociado Señor Alonso Alonso emitió un voto particular de conformidad.

– O –

Opinión concurrente y disidente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Hernández Denton.

I

La Regla 11(a)(2) de Evidencia, 32 L.P.R.A. Ap. IV, permite a los tribunales tomar conocimiento judicial de hechos

---

[7] El citado Art. 651 del Código de Enjuaciamiento Civil, 32 L .P.R.A. sec. 3423, establece, en relación con el auto de *mandamus*, que el mismo "no podrá dictarse en los casos en que se encuentre un recurso adecuado y eficaz en el curso ordinario de la ley...".

que sean "susceptibles de determinación inmediata y exacta recurriendo a fuentes cuya exactitud no puede ser razonablemente cuestionada". Bajo este ámbito caen los procedimientos judiciales y las resoluciones, órdenes y sentencias de nuestros tribunales. E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1983, Vol. I, Cap. II, págs. 34–35, citado en *Asoc. de Periodistas v. González*, 127 D.P.R. 704 (1991).[1]

En el caso ante nos, el ilustrado tribunal sentenciador (Hon. Ángel Hermida, Juez) concluyó que las apelaciones al Consejo de Educación Superior no garantizaban al demandante Hiram Guadalupe Pérez un remedio suficientemente rápido, pues "con frecuencia tardan cantidad de tiempo en ser resueltas". Apéndice, pág. 3. Por esta razón, procedió a tomar "conocimiento judicial de ello, a la luz de nuestra repetida experiencia cuando nos llegan en revisión recursos contra decisiones del Consejo". Íd., pág. 3 esc. 1.

Concurrimos con la revocación decretada por coincidir con el criterio mayoritario de que, sin los datos correspondientes, dicho pronunciamiento no provee base suficiente para apoyar el conocimiento judicial de la tardanza de las apelaciones ante el Consejo. Además, tratándose de una solicitud en torno a tan voluminosa documentación[2] —concebiblemente cientos de miles de documentos admi-

---

[1] Allí dijimos:

"En síntesis, bajo las disposiciones de la Regla 11(A)(2) de Evidencia, *supra*, se puede tomar conocimiento judicial de los procedimientos celebrados y de la sentencia o resolución dictada en cualquier causa seguida ante el mismo tribunal que toma conocimiento judicial o en cualquier otro tribunal dentro de la jurisdicción de aquél. Por tratarse de hechos cuya comprobación o determinación puede efectuarse de forma exacta e inmediata (sólo hay que acudir a la secretaría del tribunal en cuestión), es innecesario exigir en estos casos que se presente evidencia formal de los mismos." *Asoc. de Periodistas v. González*, 127 D.P.R. 704, 714–715 (1991).

[2] Solicitó:

"[a] Informe Auditorías Internas y Externas (estados financieros)

[b] Informes Contralor

[c] Respuestas de U.P.R. a los informes 1 y 2

[ch] Presupuesto oficina del Presidente—desglosado por partidas

[d] Gastos de representación de la oficina del Presidente (gasolina, tarjetas de crédito, etc.)

[e] Gastos de viaje de la oficina del Presidente, dietas, millajes, etc.

nistrativos generados durante ocho (8) años— el estudiante Hiram Guadalupe Pérez debió ser más diligente y específico en su reclamo.

## II

Discrepamos, sin embargo, de la conclusión de que, aun expresándose adecuadamente los fundamentos, un tribunal nunca podría tomar conocimiento judicial de la lentitud de los procedimientos administrativos ante el Consejo. No vemos impedimento en aquellas situaciones en que los expedientes judiciales revelen un patrón recurrente de demora e ineficacia.

Si ante el Consejo es necesario dilucidar una controversia en tres (3) meses para evitar un daño irreparable, y los expedientes judiciales revelan que son resueltos en un período mayor de tiempo, ¿cómo eliminar la posibilidad de que el juzgador, a tenor con las normas vigentes, tome conocimiento judicial de este hecho y ejecute la determinación que en derecho y justicia proceda?[3]

## III

Finalmente, nos inquieta la negativa tajante de las autoridades universitarias. De su faz, los documentos solicitados por el demandante Guadalupe Pérez —informes de

[f]   Contratos realizados (terceras personas) [listado de contratistas, proyectos y costos de proyectos]
[g]   Contratos profesionales (ej. guardias, relaciones públicas, asesores, etc.)
[h]   Auspicios y Co-auspicios (programas, actividades, escuelas, etc.)
[i]   Presupuesto general U.P.R. por partidas
[j]   Informe de compras de equipo, propiedades, carros, etc.;
[k]   Personal—incremento de éste, si alguno;
[l]   Salarios del personal administrativo gerencial, incluyendo bonificaciones, compensaciones, ayudas económicas, etc.;
[ll] Horas extras pagadas (a quién, por qué concepto)." Apéndice, pág. 25.

[3] Un caso dramático en que se combinaron la lentitud burocrática universitaria con la judicial fue *Mercado Vega v. U.P.R.*, 128 D.P.R. 273 (1991); ello motivó nuestro disenso.

auditorías, del contralor, de presupuesto, gastos de representación y de viajes, y otros— indiscutiblemente son de carácter público. "[A]l recibir del Pueblo soberano la función de gobernar, el Estado no quedó en libertad de decidir cuáles papeles y documentos resultantes de su gestión pública estarían fuera del escrutinio de quienes son, en esencia, la fuente misma de la soberanía." *Soto v. Srio. de Justicia*, 112 D.P.R. 477, 489 (1982).

Ante un reclamo de este tipo de documentos, la negativa de proveerlos debe estar adecuadamente fundamentada y justificada. *Santiago v. Bobb y El Mundo, Inc.*, 117 D.P.R. 153, 159 (1986). Las finanzas públicas no son materia privativa de los funcionarios ni administradores; más allá de la intervención de la oficina del Contralor, todo pago, gasto y reembolso está sujeto al eventual escrutinio ciudadano. La Universidad de Puerto Rico no está exenta.

La situación, aquí planteada, refleja claramente la necesidad de armonizar los intereses de manera que no se lesione el derecho a la información y se facilite la consecución de los ideales universitarios. Lo tardío y extenso del pedido del demandante Guadalupe Pérez frustra *esta vez* el remedio judicial en lo que concierne al presupuesto de la Universidad, año fiscal 1992–1993. *No es excusa* para que se atienda en sus proyecciones al presupuesto fiscal 1993–1994.

*Las puertas judiciales sólo se le han cerrado temporeramente.*

## – O –

Voto particular de conformidad del Juez Asociado Señor Alonso Alonso.

He dado mi conformidad a la opinión del Tribunal. Creo necesario, sin embargo, puntualizar y destacar varios aspectos que son fundamentales.

En primer lugar, la Universidad de Puerto Rico *no es*

*una universidad privada*, sino pública, la cual es sufragada con fondos públicos. 18 L.P.R.A. sec. 601 *et seq.* Por ello, la misma no está exenta de la norma pautada por este Foro en cuanto a que la información sobre el uso de dichos fondos públicos debe estar accesible, y sólo sujeta a aquellas limitaciones que imponen la necesidad pública más urgente, y los parámetros expuestos en *Soto v. Srio. de Justicia*, 112 D.P.R. 477 (1982), y su progenie, a saber, *Santiago v. Bobb y El Mundo, Inc.*, 117 D.P.R. 153 (1956), y *López Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987). Para obtener la información no se require como único criterio demostrar su urgencia y que exista un agravio de patente necesidad.

En segundo lugar, dicha información debe estar particularmente disponible a los miembros de los organismos oficiales creados por ley, como la Junta Universitaria que precisamente tiene la función de examinar y evaluar el presupuesto de la institución. 18 L.P.R.A. sec. 605(d)(4).[1]

En tercer lugar, el hecho de que la mayoría de la Junta Universitaria haya decidido que la información solicitada no es necesaria, no debe ser de por sí una razón que prive a uno de sus miembros, o de sus comités, del derecho a solicitarla.

En cuarto lugar, la información debe ser provista mediante procedimientos rápidos y efectivos, para que ésta se pueda obtener sin que la solicitud se torne académica por el transcurrir del tiempo o por tener que agotar un trámite burocrático tortuoso para obtenerla.

En quinto lugar, la información también debe estar disponible para que, incluso, los miembros individuales del

---

[1] Dispone la referida sección:

"(d) Corresponderá especialmente a la Junta [Universitaria]:

"(4) Considerar el proyecto de presupuesto integrado para el sistema universitario según haya sido formulado por el Presidente de la Universidad para ser sometido al Consejo y formular las recomendaciones que juzgue pertinentes." 18 L.P.R.A. sec. 605.

Consejo de Educación Superior puedan contar con ésta para el mejor descargue de su función de considerar y aprobar el uso de los fondos públicos por la Universidad de Puerto Rico. 18 L.P.R.A. sec. 602(e)(9).(²)

En síntesis, se trata de información solicitada por miembros de organismos internos de la Universidad del Estado, y del uso que ella hace de los fondos públicos.

---

(²)   Dispone dicha sección:
"(e) Deberes y atribuciones indelegables del Consejo,

"(9) Considerar y aprobar el proyecto de presupuesto del sistema universitario que le someta el Presidente, y aprobar un sistema unifome de contabilidad y auditoría para el uso de los fondos de la Universidad conforme a la ley y a los reglamentos." 18 L.P.R.A. sec. 602(e)(a).