Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| FELIX CASTRO SANTIAGO, MARCOS DIAZ APONTE, HECTOR L. MOLINA MADAL, HARRY MARTELL RODRÍGUEZ<br>**Apelante**<br><br>V.<br><br>ADM. CORRECCIÓN, SRA. ANA ESCOBAR PABÓN SUP. A NIVEL CENTRAL DE LOS SOCIALES PENALES DE CORRECCIÓN, SRA. MARÍA ORTIZ SUPERINTENDENTE DE LA FASE 1 MIN DE PONCE, SR. HARRY FELICIANO MALDONADO SUPERVISOR DE RECORD CRIMINAL DE LA FASE 1 MIN DE PONCE, SRA. BRENDA ALVARADO PAGÁN SUPERVISORA DE SOCIALES PENALES DE LA FASE 1 MIN DE PONCE, SRA. GISELA PAGÁN TOLEDO<br>**Apelado** | KLAN202400372 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil. Núm.<br><br>PO2023CV01275<br><br>Sobre:<br><br>MANDAMUS PERENTORIO, INTERDICTO PRELIMINAR Y PERMANENTE |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 9 de mayo de 2024.

El 15 de abril de 2024, el Sr. Félix Castro Santiago, el Sr. Marcos Díaz Aponte, el Sr. Héctor Molina Nadal y el Sr. Harry Martell Rodríguez (en conjunto, los apelantes) comparecieron ante nos mediante un *Escrito de Apelación* y solicitaron la revisión de una *Sentencia* que se dictó y notificó el 21 de marzo de 2024 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI). Mediante el aludido dictamen, el TPI desestimó con perjuicio una petición de *mandamus* presentada por los apelantes por falta de jurisdicción.

Número Identificador

SEN2024 _____

Por los fundamentos que expondremos a continuación, **confirmamos** la sentencia apelada.

I.

El 16 de enero de 2022, los apelantes presentaron una *Petición de Mandamus Perentorio* contra la Administradora Corrección, la Supervisora a Nivel Central de los Sociales Penales de Corrección, el Superintendente de la Fase 1 Mínima de Ponce, el Supervisor de Récord Criminal de la Fase 1 Mínima de Ponce, y la Supervisora de Sociales Penales de la Fase 1 Mínima de Ponce (en conjunto, los apelados).[1] Mediante este escrito, alegaron que los apelantes se encontraban cumpliendo sus respectivas sentencias bajo la custodia de la administración de corrección y estaban recluidos en la institución correccional de Ponce-Fase 1 Mínima. Adujeron que la administración de corrección no quería aplicarle la Ley 85-2022 y Ley 66-2022 y por tal motivo, le solicitaron al TPI a que concediera el auto de *mandamus*, ordenara a los apelados a cumplir con las leyes antes mencionadas y celebrara una vista para que los apelantes pudieran demostrar la veracidad de sus alegaciones.

Tras varios asuntos procesales los cuales no son necesarios detallar, el 25 de enero de 2024, el TPI emitió una *Orden* en la cual le concedió a los apelantes un término de diez (10) días para que cumplieran con una orden que se había emitido previamente el 26 de diciembre de 2023, la cual le requirió a cada uno de los apelantes especificar cuál era su reclamación conforme a la Regla 8.2 de Procedimiento Civil, 32 LPRA. Ap. V R. 8.2, cuál fue el deber ministerial incumplido y las gestiones que se realizaron para solicitar el cumplimiento conforme a lo que exige la Regla 54 de Procedimiento Civil, *supra*.[2] Ante esta directriz, el 31 de enero de

---

[1] Véase, apéndice de los apelantes, págs. 1-8.
[2] Véase SUMAC, Entrada 25.

2024, los apelantes presentaron una *Moción en Cumplimiento de Orden Parcial.*[3] Mediante esta, adujeron que en la propia petición que inició la presente controversia, los apelantes especificaron el incumplimiento por parte del Gobierno en cuanto aplicar tanto la Ley 66-2022 como la Ley 85-2022. Asimismo, esbozaron que los cuatro (4) expedientes de cada uno de los apelantes no habían sido adjudicados y "que agotar el remedio administrativo sería una pérdida de tiempo ya que la agencia se niega a ello".[4]

Transcurrido un tiempo, el 24 de febrero de 2024, compareció el Departamento de Corrección y Rehabilitación (DCR) mediante una *Moción Informativa.*[5] En esta informó que, en las liquidaciones de sentencias presentadas por los apelantes, se les aplicó la Ley 85-2022 y que en principio la Ley 66-2022 no le aplicaba a ninguno de los apelantes. Esbozó que tres (3) de los apelantes, a saber, el Sr. Félix Castro Santiago, el Sr. Harry Martell Rodríguez y el Sr. Héctor Molina Nadal fueron referidos a la Junta de Libertad Bajo Palabra entre los meses de febrero y abril de 2023. Explicó que, en el caso del Sr. Marcos Diaz Aponte, luego de la aplicación de Ley 85-2022, le correspondía ser referido para el 2024.

Por otro lado, sostuvo que, en cuanto al planteamiento de agotamientos de remedios, los apelantes ya habían iniciado los procedimientos administrativos sin completarlos. En particular, detalló que estos fueron apercibidos de los procedimientos, foros y términos en que debían recurrir de no estar conforme con las determinaciones administrativas que, en este caso, por tratarse de liquidaciones de sentencia al aplicar las bonificaciones conforme a las legislaciones correspondientes, es tema de la pericia del DCR. Finalmente arguyó que, en este caso no se había establecido el deber

---

[3] Véase, apéndice de los apelantes, págs. 92-94.
[4] Íd., pág. 93.
[5] Íd., págs. 115-116.

ministerial incumplido puesto que se han evaluado las liquidaciones de sentencia y se han aplicado aquellas leyes que en derecho corresponde a los apelantes.

El 26 de febrero de 2024, los apelantes presentaron una *Réplica a Moción Informativa.*[6] En esencia, alegó que el argumento del DCR referente a que no les era aplicable la Ley 66-2022 no era válido. Del mismo modo, sostuvo que era impráctico plantear agotar los remedios administrativos cuando ha habido inacción por parte de la agencia. Por todo lo anterior, le solicitó al TPI la celebración de una vista para expedir el *mandamus* solicitado.

Evaluado las posturas de las partes, el 21 de marzo de 2024, el TPI emitió su *Sentencia.*[7] En esta concluyó que los apelantes ya habían iniciado los trámites en el foro administrativo sin completarlos y que fueron apercibidos de los procedimientos, foros y términos en que debía recurrir de no estar conformes con sus respectivas determinaciones, tanto en reconsideración como en revisión judicial ante el Tribunal de Apelaciones. Determinó que, al tratarse de un tema de bonificaciones en el proceso de liquidación de sentencia, el asunto requería la pericia del DCR y la jurisdicción para revisión de los dictámenes de dicha agencia debía ser en el Tribunal de Apelaciones y no en el TPI. Así pues, dictaminó que en este caso no se demostró cual fue el deber ministerial incumplido toda vez que las liquidaciones de sentencia fueron evaluadas. En ese sentido, determinó que el TPI no tenía jurisdicción pare atender los remedios solicitados.

Inconforme, el 15 de abril de 2024, los apelantes acudieron ante nos mediante un *Escrito de Apelación* y formularon el siguiente señalamiento de error:

> **Erró el Tribunal de Primera Instancia, Sala Superior de Ponce, al desestimar la demanda sin tomar en**

---

[6] Íd., págs. 215-217.
[7] Íd., págs. 228-246.

**cuenta la existencia de hechos que no ameritaban agotar el Procediendo Administrativo.**

Atendido el recurso, el 17 de abril de 2024, le concedimos un término hasta el 30 de abril de 2024 a la parte apelada para que presentara su postura. Oportunamente, el 29 de abril de 2024, compareció la Oficina del Procurador General de Puerto Rico, en representación del DCR mediante su *Alegato en Oposición* en la cual negó la comisión del error imputado. Con el beneficio de la comparecencia de las partes, procedemos a resolver la controversia que está ante nuestra consideración.

II.

**-A-**

La doctrina de agotamiento de remedios administrativos es una norma de autolimitación judicial que determina la etapa en que los tribunales deben intervenir en una controversia que se presentó inicialmente ante un foro administrativo. *SLG Flores-Jiménez v. Colberg,* 173 DPR 843, 851 (2008). Sobre el particular, la Sección 4.2 de la Ley Núm. 38-2017, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, según enmendada, 3 LPRA sec. 9673 (LPAUG) establece que:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

La referida doctrina exige que una parte que solicita un remedio en una agencia utilice todas las vías administrativas a su alcance antes de acudir al foro judicial. *Guzmán y otros v. ELA,* 156 DPR 693, 711 (2002). Así, la norma de agotamiento de remedios

administrativos aplica en los casos en los cuales una parte, que instó o tiene instada alguna acción ante una agencia u organismo administrativo, recurre ante un tribunal sin completar todo el trámite administrativo disponible. *Ortiz v. Panel FEI*, 155 DPR 219, 242 (2001). Es decir, esta doctrina "se invoca para cuestionar la acción judicial de un litigante que originalmente acudió a un procedimiento administrativo o era parte de este, pero habiendo estado allí, no agotó todos los recursos disponibles a su favor". Íd. Para su aplicación, es necesario, además, que exista alguna fase del procedimiento que la parte concernida deba agotar. *Mun. de Caguas v. AT&T*, 154 DPR 401, 409 (2001).

Según *Guadalupe v. Saldaña, Pres. UPR*, 133 DPR 42, 49 (1993), "al posponer la etapa en que el litigante pueda recurrir al tribunal se logra: (1) que la agencia concernida, antes de la intervención judicial, pueda desarrollar un historial completo del asunto ante su consideración; (2) que la agencia pueda utilizar el conocimiento especializado de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad, y (3) que la agencia pueda aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos". Conforme a lo anterior, como regla general, la revisión judicial de una decisión administrativa no está disponible hasta que la parte afectada no haya concluido los procedimientos ofrecidos por la agencia administrativa. *Guzmán y otros v. ELA, supra,* pág. 711.

Ahora bien, la Sección 4.3 de la LPAUG, 3 LPRA sec. 9673, dispone que:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al

promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.

En virtud de dicha Ley, el Tribunal Supremo ha sido enfático en advertir que el requisito de agotar los remedios ante la agencia administrativa no se puede preterir para acceder al foro judicial, a menos que se cumplan algunas de las excepciones establecidas en el estatuto. *Guzmán y otros v. ELA*, *supra,* pág. 714. Al respecto, el Tribunal Supremo ha expresado que "para preterir el requisito del agotamiento no basta con que los remedios administrativos sean lentos; se requiere también que éstos constituyan una gestión inútil e inefectiva o que produzcan un daño irreparable". *SLG Flores-Jiménez v. Colberg, supra*, pág. 852. Sin embargo, debemos recordar que el daño irreparable al que se refiere la jurisprudencia es uno de "patente intensidad al derecho del individuo que reclame urgente reparación". Íd.  En el caso que se constituya dicho daño irreparable, se podría utilizar el *injunction* para eludir el cauce administrativo. Íd.

Además, es necesario que quien recurre al foro judicial alegando que debe prescindirse del requisito de agotamiento de remedios administrativos, señale hechos específicos y bien definidos, y los exponga de manera tal que le permita al tribunal evaluar la defensa del Estado. *Guadalupe v. Saldaña, Pres. UPR, supra,* pág. 50. Por último y en lo pertinente al caso ante nos, el Tribunal Supremo estableció que la excepción relativa a un "asunto estrictamente de derecho" no significa que se tenga que eximir a la parte del cauce administrativo de manera automática. J.A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño,* 4ta. Ed. SITUM, 2017, pág. 74. Ello ya que existen asuntos estrictamente de

derecho que requieren el conocimiento especializado y la evaluación de derecho de la agencia administrativa. Íd.

**-B-**

El auto de *mandamus* es el recurso adecuado para solicitarle al tribunal que le ordene a una persona, a una corporación o a un tribunal de inferior jerarquía, que cumpla o ejecute un acto que forma parte de sus deberes y atribuciones. Art. 649 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421; Regla 54 de Procedimiento Civil, 32 LPRA, Ap. V, R. 54. El *mandamus* no confiere nueva autoridad y la parte a quien obliga deberá tener la facultad de poder cumplirlo. Íd. El carácter privilegiado que caracteriza el *mandamus* significa que su expedición no se invoca como cuestión de derecho, sino que descansa en la sana discreción del foro judicial. *Carrasquillo Román v. Departamento de Corrección*, 204 DPR 699, 713 (2020). En estos casos, la discreción implica que el tribunal no está atado a un remedio en específico, "sino que puede diseñar un remedio compatible con los intereses públicos envueltos". *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 269 (2010).

El recurso de *mandamus* solo puede utilizarse para exigir que se cumpla con un deber ministerial cuando no se dispone de otro remedio legal adecuado. Es decir, "no procede cuando hay un remedio ordinario dentro del curso de ley, porque el objeto del auto no es reemplazar remedios legales sino suplir la falta de ellos". Íd., pág. 266-267. Si los remedios de ley no son adecuados y son incompatibles con la justicia, puede recurrirse al *mandamus*. *González Saldaña v. Tribunal Superior*, 92 DPR 477, 487 (1965). Sobre el deber ministerial, el Tribunal Supremo ha expresado que este "no se trata de una directriz o una disposición que permite hacer algo, sino de un mandato específico que la parte demandada no tiene opción para desobedecer". *Carrasquillo Román v. Departamento de Corrección*, supra, pág.713. El deber ministerial que exige el recurso de *mandamus* emana de un empleo, cargo o función pública. *AMPR v. Srio. Educación, E.L.A.*, *supra*, pág. 265.

III.

En la presente controversia, los apelantes nos solicitaron la revocación de una *Sentencia* que el TPI dictó y notificó el 21 de marzo de 2024. En específico, en su único señalamiento de error, argumentaron que el TPI incidió al desestimar el presente pleito sin tomar en consideración la existencia de hechos que no justificaban el tener que agotar el procedimiento administrativo. No le asiste la razón. *Veamos.*

Surge del expediente que los cuatro (4) apelantes se encuentran cumpliendo sus respectivas sentencias en una institución penal bajo la custodia del DCR. Dicha agencia compareció mediante una *Moción Informativa* e indicó que los apelantes comenzaron el procedimiento administrativo de liquidación de sentencia para acogerse a los beneficios de las leyes invocadas en la petición de *mandamus*. Específicamente, el DCR informó lo siguiente:

> 9. A los demandantes Félix Castro Santiago, Harry Martel Rodríguez y Marcos Diaz Aponte les fue aplicada la Ley 85-2022.
> 10. Los demandantes Félix Castro Santiago, Héctor Molina Nadal, Harry Martell Rodriguez fueron referidos a la Junta de Libertad Bajo Palabra entre los meses de febrero y abril de 2023.
> 11. En el caso de Marcos Diaz Aponte, luego de la aplicación de Ley 85, le corresponde ser referido para el año 2024, toda vez que el mínimo requerido en ley se cumple el 11 de noviembre de 2024.[8]

Nótese que todas estas gestiones se llevaron a cabo en una fecha posterior a la presentación de la petición que dio origen a este pleito. La prueba ante nos confirma que, en efecto, los apelantes comenzaron el procedimiento administrativo en cuanto a la aplicación de la bonificación en sus sentencias. Dichos procedimientos se originaron en la División de Remedios Administrativos del DCR el cual está regulado por el *Reglamento*

---

[8] Véase, apéndice de los apelantes, págs. 115.

*para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional*, Reglamento Núm. 8583 de 4 de mayo de 2015 (Reglamento Núm. 8583).

La Regla XIV del mencionado reglamento establece que, si algún miembro de la población correccional no estuviera de acuerdo con la respuesta emitida por la agencia, estos podrán "solicitar la revisión, mediante escrito de Reconsideración ante el Coordinador dentro de un término de veinte (20) días calendario, contados a partir del recibo de la notificación de la respuesta". Si, aun así, el miembro de la población correccional no estuviera de acuerdo con la respuesta de la reconsideración, podría entonces recurrir de dichas determinaciones ante este foro intermedio mediante una revisión judicial. Regla XV del Reglamento Núm. 8583. Por tal motivo, no cabe hablar de agotar los remedios pues ni tan si quiera se ha concedido o denegado aquellos remedios que los apelantes originalmente solicitaron en el foro administrativo. Por tanto, el proceder del TPI en cuanto desestimar el presente pleito por falta de jurisdicción fue correcto, por lo cual el error imputado no se cometió.

IV.

Por los fundamentos que anteceden, ***confirmamos*** la determinación recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones