Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| COMISIÓN DE JUEGOS DEL GOBIERNO DE PUERTO RICO<br><br>Recurrida<br><br><br>v.<br><br><br>MANUEL ROSARIO JINETE LIC. #20-338<br><br>Recurrente | KLRA202300479 | *Revisión Judicial* procedente de la Comisión de Juegos del Gobierno de Puerto Rico<br><br>Caso Núm. NH-23-16<br><br>Sobre: Violación Cap. 7-Art. XXX, Secc. 3011 (b) (c) (e) (f) del Reglamento Hípico-Parte General y de Licencias #8944 del 6 de abril de 2017 |

Panel integrado por su presidente el Juez Bermúdez Torres, la Juez Aldebol Mora y la Juez Ortiz Flores[1]

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de noviembre de 2023.

I.

El 21 de marzo de 2023, la Comisión de Juegos de Puerto Rico instó *Querella* contra el Sr. Manuel Rosario. De dicha *Querella* se desprende que, luego de las carreras celebradas el 16 de marzo de 2023, ese mismo día el Jurado Hípico presentó *Informe del Jurado Hípico al Director Ejecutivo*. En dicho *Informe* el Jurado suspendió al jinete Manuel Rosario de sus labores por violaciones al Artículo 3011 (b), (c), (e) y (f) del Reglamento de Carreras, Reglamento Núm. 8493 de 6 de abril de 2017 y lo refirió al trámite administrativo concerniente.

Al día siguiente, la Confederación de Jinetes Puertorriqueños presentó *Solicitud para que se Deje sin Efecto la Suspensión Sumaria*

---

[1] Mediante la Orden Administrativa OATA-2023-180 de 17 de octubre de 2023, por haberse inhibido el Hon. Nery E. Adames Soto se designa en sustitución a la Hon. Laura I. Ortiz Flores, para entender y votar en el recurso del epígrafe.

*Impuesta al Jinete Manuel Rosario.* Arguyeron que el Reglamento Hípico no facultaba al Jurado a suspender a los jinetes o personas con licencia otorgadas por la Comisión de Juegos de Puerto Rico. El 19 de marzo de 2023, el Jurado remitió un *Informe* al Director del Negociado Hípico sobre el incidente que ocurrió entre el Juez de Salidas y el señor Rosario. Además, solicitaron que el caso fuera evaluado para una posible suspensión de licencia o declaración de estorbo hípico.

El 21 de marzo de 2023, se le notificó formalmente la presentación de la *Querella* al señor Rosario y se le citó a comparecer a un Vista en la Comisión de Juegos el 24 de marzo de 2023. Llegado el día de la vista, la Comisión de Juegos accedió a levantar la suspensión del señor Rosario hasta que se dilucidara el caso. Tras varias suspensiones de vistas, y luego de imponerle una sanción económica al Representante legal del señor Rosario, el 9 de agosto de 2023 se celebró la Vista en su fondo. Allí, ambas partes comparecieron representadas, pero el señor Rosario no presentó prueba documental u oral alguna, y tampoco ejerció su derecho a contrainterrogar a los testigos de cargo.

El 15 de agosto de 2023, notificada el 21, la Comisión de Juegos emitió *Resolución* declarando "Con Lugar" la *Querella* y suspendió la licencia de jinete del señor Rosario por el término de treinta y cinco (35) días naturales. En la *Resolución*, se le apercibió al señor Rosario de su derecho a presentar reconsideración y posteriormente revisión administrativa ante la Comisión de Juegos.

Insatisfecho, el 11 de septiembre del 2023, el señor Rosario acudió ante nuestra consideración mediante *Solicitud de Revisión Judicial.* Planteó:

> **Primer error:**
> Erró el Juez Administrativo al sostener la suspensión sumaria que le fuera impuesta al peticionario, cuando de las disposiciones aplicables de Ley Hípica y el reglamento Hípico vigente se desprende que el Jurado

Hípico no tiene facultad para la imposición de una suspensión sumaria.

**Segundo error:**
Erró el Juez Administrativo al declarar con lugar la querella presentada en contra del peticionario, cuando de las disposiciones aplicables de ley se desprende que el Jurado Hípico había violentado el debido proceso de ley al que éste tiene derecho.

**Tercer error:**
Erró el Juez Administrativo al adjudicar y declarar con lugar una querella presentada en contra del peticionario por el Director Ejecutivo de la Comisión de Juegos, cuando de las disposiciones de ley aplicables se desprende que el Director Ejecutivo de la agencia perdió jurisdicción sobre el caso por haber celebrado la vista para atender una suspensión sumaria luego de transcurridos los 5 días laborables para ello, y cuando el Director Ejecutivo no tiene facultad en ley para imponer sanciones basado en una declaración de prácticas indeseables y/o estorbo hípico.

El 13 de septiembre de 2023, emitimos *Resolución* concediéndole término de treinta (30) días a la Comisión de Juegos para que se expresara sobre el presente recurso. El 13 de octubre de 2023, la Comisión de Juegos instó *Moción en Solicitud de Desestimación* basado en que carecíamos de jurisdicción. Arguyó que, el señor Rosario debía de agotar los remedios administrativos de la Agencia según dispone el Reglamento Núm. 9423.

Por su parte, el 24 de octubre de 2023, el señor Rosario presentó *Moción en Oposición a Desestimación.* Planteó que, la Ley de la Industria y el Deporte Hípico de Puerto Rico, Ley Núm. 83 del 2 de julio de 1987, según enmendada,[2] permite llevar un recurso de revisión ante el Tribunal de Apelaciones de Puerto Rico luego de obtener una resolución final. Señaló, además, que, cualquier disposición del Reglamento Núm. 9423 que esté en contravención con la Ley Núm. 83-1987, vulnera el debido proceso de ley.

Posteriormente, el 26 de octubre de 2023, el señor Rosario instó *Moción en Oposición a Desestimación Enmendada.* En esta ocasión sostuvo que, fue notificado de la *Resolución* el 21 de agosto

---

[2] 15 LPRA § 198 *et seq.*

de 2023, y que la suspensión era efectiva desde el 23 de agosto de 2023. A esos efectos, se le hacía imposible agotar los remedios administrativos antes de que se viera afectado por la disposición del caso. Aun así, alegó que conforme la Ley Núm. 83-1987, era improcedente la *Moción en Solicitud de Desestimación.*

Contando con el beneficio de las comparecencias de las partes, procedemos a resolver.

II.
A.

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201 de 22 de agosto de 2003, según enmendada,[3] delimita la facultad revisora de este Tribunal de Apelaciones. En lo pertinente, establece que se podrá recurrir ante este Foro "[m]ediante recurso de revisión judicial, que se acogerá como cuestión de derecho, de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas".[4] Cónsono con ese mandato legal, la Regla 56 de nuestro Reglamento limita nuestra jurisdicción revisora a determinaciones administrativas finales.[5]

Lo anterior es igualmente compatible con las disposiciones de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38 del 30 de junio de 2017,[6] y con la doctrina de agotamiento de remedios administrativos. Al respecto, el Sec. 4.2 de la LPAU dispone que, "[u]na parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones".[7]

---

[3] 4 LPRA § 24 *et seq.*
[4] Íd. § 24 y (c).
[5] 4 LPRA Ap. XXII-B, R. 56.
[6] 3 LPRA § *et seq.*
[7] Íd., § 9672.

En cuanto a la doctrina de agotamiento de remedios administrativos, sabemos que constituye una norma de autolimitación judicial que determina la etapa en que un tribunal de justicia debe intervenir en una controversia que se ha presentado inicialmente en un foro administrativo.[8] Al determinar la etapa en la cual el litigante puede recurrir a los tribunales, esta doctrina evita una intervención judicial innecesaria que interfiera con el trámite normal del proceso administrativo.[9] La necesidad de agotar los remedios administrativos antes de acudir al foro judicial es un requisito jurisdiccional,[10] el cual impide la intervención judicial hasta tanto no hayan sido agotados todos los remedios administrativos disponibles al nivel de la agencia.[11] Así, la determinación administrativa reflejará la postura final de la agencia.[12]

B.

La Ley Núm. 81-2019, rectora de la política pública del Gobierno de Puerto Rico en torno a las apuestas en eventos deportivos y ligas de juegos electrónicos,[13] creó la Comisión de Juegos de Puerto Rico. Su Artículo 2.2 dispone que la Comisión de Juegos regirá, fiscalizará y tendrá jurisdicción sobre todos los asuntos de la industria de las apuestas autorizadas por *internet,* en deportes, ligas de juegos electrónicos e inclusive, sobre los asuntos dispuestos en la Ley de la Industria y Deporte Hípico de Puerto Rico.[14] Entiéndase, que la Comisión de Juegos queda facultada para reglamentar lo concerniente a la industria y el deporte hípico.[15] Cónsono con lo anterior, la Comisión de Juegos está facultada para

---

[8] *S.L.G. Flores-Jiménez* v. *Colberg*, 173 DPR 843, 851 (2008).
[9] *Guadalupe* v. *Saldaña, Pres. UPR*, 133 DPR 42, 49 (1993).
[10] *Asoc. Pesc. Pta. Figueras* v. *Pto. del Rey*, 155 DPR 906, 916 (2001).
[11] *Guzmán y otros* v. *ELA*, 156 DPR 693, 714 (2002).
[12] *Colón Rivera et al.* v. *ELA*, 189 DPR 1033 (2013).
[13] Art. 1.2 de la Ley Núm. 81-2019. 15 LPRA § 981a.
[14] 15 LPRA § 982a.
[15] Art. 4 de la Ley Núm. 83 de julio de 1987, según enmendada, conocida como *Ley de la Industria y el Deporte Hípico de Puerto Rico*, 15 LPRA § 198e.

dictar todas aquellas órdenes, reglas y resoluciones, además de tomar medidas necesarias conducentes a la seguridad física, económica y social de las personas naturales o jurídicas relacionadas con la industria y el deporte hípico.[16]

Recientemente la Comisión de Juegos creó el *Reglamento de Procedimientos Adjudicativos ante la Comisión de Juegos de Puerto Rico*, Reglamento Núm. 9423 de 27 de diciembre de 2022. En lo pertinente, dicho Reglamento tiene como propósito uniformar y establecer las normas que aplicarán a todos los procedimientos adjudicativos ante la Comisión de Juegos y el Negociado del Deporte Hípico.

En cuanto a las solicitudes de reconsideración, el Artículo 3.40 del Reglamento 9423 dispone que, "la parte afectada por la resolución u orden de la Comisión podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración […]". Mientras que, sobre el proceso de revisión judicial, el Artículo 3.41 del Reglamento 9423, establece que:

> Una parte adversamente afectada por una orden o resolución final de la Comisión, y que **haya agotado todos los remedios administrativos podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones**, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final.

C.

Es axioma encumbrado y trillado que un recurso prematuro al igual que uno tardío, "sencillamente adolece del grave e insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre".[17] Sin embargo, existe una importante diferencia en las consecuencias que acarrean. La desestimación por tardío priva fatalmente a la parte de poder presentar el recurso nuevamente,

---

[16] Íd.
[17] *Julia Padró, et al* v. *Vidal, S.E.*, 153 DPR 357, 366 (2001); *Rodríguez* v. *Zegarra*, 150 DPR 649, 654 (2000).

ante el mismo foro o cualquier otro. No obstante, la desestimación de un recurso por prematuro permite que la parte que recurre pueda presentarlo nuevamente, una vez el foro apelado resuelve lo que estaba ante su consideración.[18] Según nuestro Tribunal Supremo de Puerto Rico, prematuro es lo que ocurre antes de tiempo; en el ámbito procesal, una revisión o un recurso prematuro es aquel presentado en la secretaría de un tribunal apelativo antes de que éste tenga jurisdicción.[19]

La presentación de un recurso prematuro carece de eficacia y no produce ningún efecto jurídico, pues en ese momento o instante en el tiempo (*punctum temporis*) no ha nacido autoridad judicial o administrativa alguna para acogerlo; menos, para conservarlo con el propósito de luego reactivarlo en virtud de una moción informativa.[20]

Es sabida norma que la jurisdicción es la autoridad que tienen los foros judiciales para atender controversias con efecto vinculante para las partes, por lo que el incumplimiento con estos requisitos impide que nosotros podamos atender la controversia que se nos presenta.[21] Los tribunales estamos llamados a ser guardianes de la jurisdicción que nos autoriza entender en los méritos de un caso.[22] "Las cuestiones relativas a la jurisdicción de un tribunal son privilegiadas y como tal deben atenderse y resolverse con preferencia a cualesquiera otras".[23] Los tribunales no pueden atribuirse

---

[18] Véase: *Yumac Home* v. *Empresas Masso,* 194 DPR 96, 107 (2015); *Torres Martínez* v. *Ghigliotty,* 175 DPR 83, 97-98 (2008).

[19] *Hernández* v. *Marxuach Const. Co.*, 142 DPR 492, 497 (1997).

[20] *Julia,* 153 DPR, pág. 367; *Rodríguez* v. *Zegarra*, 150 DPR, pág. 654.

[21] *Pérez Soto* v. *Cantera Pérez, Inc. y otros*, 188 DPR 98 (2013); *Souffront* v. *AAA*, 164 DPR 663, 674 (2005).

[22] *Torres Alvarado* v. *Madera Atiles,* 202 DPR 495 (2019); *Carattini* v. *Collazo Systems Analysis, Inc.,* 158 DPR 345 (2003); *Vázquez* v. *ARPE*, 128 DPR 513, 537 (1991).

[23] *Ruiz Camilo* v. *Trafon Group, Inc.,* 200 DPR 254, 267 (2018); *S.L.G. Szendrey-Ramos* v. *F. Castillo,* 169 DPR 873, 882 (2007); *Morán* v. *Martí,* 165 DPR 356, 364 (2005); *Vega et al.* v. *Telefónica,* 156 DPR 584, 595 (2002); *Pagán* v. *Alcalde Mun. de Cataño,* 143 DPR 314, 326 (1997).

jurisdicción si no la tienen, ni las partes en litigio pueden otorgársela.[24]

La ausencia de jurisdicción es insubsanable.[25] Así, cuando un tribunal determina que no tiene la autoridad para atender un recurso, sólo puede así declararlo y desestimar el caso.[26] Las disposiciones reglamentarias sobre los recursos a presentarse ante este Tribunal de Apelaciones deben observarse rigurosamente.[27] Conforme a ello, la Regla 83 de nuestro Reglamento sobre desistimiento y desestimación, nos concede facultad para desestimar por iniciativa propia un recurso de apelación o denegar la expedición de un auto discrecional, entre otras razones, por falta de jurisdicción.[28]

### III.

De inicio, nos corresponde determinar si ostentamos jurisdicción para atender el presente *Recurso*. Veamos.

El 21 de septiembre de 2023, el señor Rosario fue notificado sobre la *Resolución* que emitió la Comisión de Juegos suspendiéndole su licencia de jinete desde el 23 de agosto de 2023 hasta el 15 de septiembre del mismo año. En la *Resolución* se apercibió al señor Rosario de su derecho a presentar reconsideración ante la Comisión. No obstante, el señor Rosario optó por acudir ante nos mediante *Solicitud de Revisión Administrativa*. Evidentemente, el señor Rosario ignoró la exigencia reglamentaria de reciente creación, de presentar una moción de reconsideración como parte de los remedios administrativos provistos por dicho Reglamento previo a presentar una solicitud de revisión judicial ante

---

[24] *Allied Management Group Inc.* v. *Oriental Bank*, 204 DPR 374 (2020); *Maldonado* v. *Junta Planificación*, 171 DPR 46, 55 (2007); *Vázquez*, 128 DPR, pág. 537.
[25] Íd; *Souffront,* 164 DPR, pág. 674.
[26] *Caratini,* 158 DPR, pág. 356; *Vega,* 156 DPR, pág. 595.
[27] *Isleta, LLC* v. *Inversiones Isleta Marina, Inc.*, 203 DPR 585 (2019); *García Morales* v. *Mercado Rosario,* 190 DPR 632 (2014); *Soto Pino* v. *Uno Radio Group,* 189 DPR 84 (2013); *Hernández* v. *The Taco Maker,* 181 DPR 281 (2011); *Lugo* v. *Suárez,* 165 DPR 729 (2005); *Pellot* v. *Avon,* 160 DPR 125 (2003).
[28] 4 LPRA Ap. XXII-B, R. 83.

este Foro de apelaciones. Ciertamente, su proceder nos priva de jurisdicción para atender su recurso, y corresponde que ordenemos su *desestimación*.

## IV.

Por los fundamentos antes expuestos, *desestimamos* el recurso por falta de jurisdicción.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La juez Aldebol Mora emite por escrito Voto Concurrente.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| COMISIÓN DE JUEGOS DEL GOBIERNO DE PUERTO RICO<br><br>Recurrida<br><br>v.<br><br>MANUEL ROSARIO JINETE LIC. #20-338<br><br>Recurrente | KLRA202300479 | *Revisión Judicial* procedente de la Comisión de Juegos del Gobierno de Puerto Rico<br><br>Caso Núm. NH-23-16<br><br>Sobre: Violación Cap. 7-Art. XXX, Secc. 3011 (b) (c) (e) (f) del Reglamento Hípico-Parte General y de Licencias #8944 del 6 de abril de 2017 |
|---|---|---|

Panel integrado por su presidente el Juez Bermúdez Torres, la Juez Aldebol Mora y la Juez Ortiz Flores.

**VOTO CONCURRENTE DE LA JUEZ WALESKA ALDEBOL MORA**

En San Juan, Puerto Rico, a 15 de noviembre de 2023.

Concurro con lo resuelto mediante la *Sentencia* de epígrafe, por entender que procede la desestimación del recurso por falta de jurisdicción, toda vez que nos encontramos ante un recurso prematuro en el cual la parte recurrente no agotó los remedios administrativos provistos por el *Reglamento de Procedimientos Adjudicativos ante la Comisión de Juegos del Gobierno de Puerto Rico*, Reglamento Núm. 9423 de 27 de diciembre de 2022 (Reglamento Núm. 9423). Ahora bien, **la Mayoría de este Panel descansa su análisis en que una parte tiene la obligación de presentar una solicitud de reconsideración sobre una determinación final de una agencia antes de acudir ante este Tribunal oportunamente mediante un recurso de revisión administrativa**. Esta interpretación que convierte la presentación de una solicitud de reconsideración en una condición *sine qua non* para activar la jurisdicción de este Foro es desacertada. Sabido es que la solicitud

de reconsideración de una resolución final de un organismo administrativo es un derecho –no una obligación– que ostenta una parte que entienda que esa determinación administrativa le afecta negativamente. El criterio para activar la jurisdicción de este Tribunal intermedio es claro: que se recurra de un dictamen final emitido por un ente administrativo. Es decir, no se requiere que una parte recurra de una resolución que resuelva una solicitud de reconsideración sobre un dictamen final o luego de pasado el término para ello sin que la agencia la resolviera. No hay cabida para tal interpretación en nuestro ordenamiento jurídico.

Por el contrario, en el caso de autos, el remedio que no se agotó previo a la presentación del presente recurso fue la solicitud de revisión ante la Junta de Comisionados, dentro del término jurisdiccional de veinte (20) días a partir de la notificación de la determinación a ser revisada. En particular, el Artículo 3.39 del Reglamento Núm. 9423 reza como sigue:

> **Cualquier parte adversamente afectada por las órdenes, decisiones, suspensiones o multas impuestas por el Director Ejecutivo o cualquier otro funcionario autorizado para ello**, en el ejercicio de los deberes y poderes conferidos, **podrá** personalmente, o mediante representación legal, **solicitar la revisión ante la Junta de Comisionados** dentro del término jurisdiccional de veinte (20) días a partir de la notificación de la determinación a ser revisada. (Énfasis nuestro).

[…]

De hecho, en su *Moción en Solicitud de Desestimación*, la parte recurrida argumentó que los remedios que tenía que agotar la parte recurrente, previo a acudir ante este Foro, eran la presentación de una solicitud de reconsideración o una revisión ante la Junta de Comisionados. En específico, señaló que "las órdenes, decisiones, suspensiones o multas impuestas por el Director Ejecutivo, así como las de cualquier otro funcionario autorizado, son revisables ante la

Junta de Comisionados".[1] Dicho planteamiento es cónsono con el precitado Artículo del Reglamento Núm. 9423.

Incluso, de las advertencias esbozadas en la propia *Resolución* que nos ocupa, surge claramente que la parte recurrente podía presentar un petitorio de reconsideración o un recurso de revisión ante la Junta de Comisionados. **Nada se expresó sobre el derecho de la parte a presentar una revisión judicial ante este Tribunal, pues primerio tenía que agotar un recurso similar ante la referida Junta**. En lo pertinente, la determinación recurrida lee de la siguiente forma:

> La parte adversamente afectada por una Resolución u Orden, parcial o final del Directo Ejecutivo o del Jurado Hípico, podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la Notificación de la Resolución u Orden, presentar una Moción de Reconsideración.

> El Director Ejecutivo, dentro de los quince (15) días siguientes a haberse presentado dicha Moción de Reconsideración, deberá considerarla. Si la rechazare de plano o no actuare dentro de los 15 días, el término de veinte (20) días para solicitar revisión ante el cuerpo rector de la Comisión de Juegos (en adelante[,] la Comisión) comenzará a correr nuevamente desde que se notifique la denegatoria o que expiren esos 15 días, según sea el caso.

> Si se tomare alguna determinación en su consideración, el término para solicitar revisión ante la Comisión empezará a contarse desde la fecha en que se archiva en autos una copia de la Notificación de la Resolución del Director Ejecutivo resolviendo definitivamente la Moción cuya Resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la presentación de la Moción de Reconsideración. Si el Director Ejecutivo dejare de tomar alguna acción con relación a la Moción de Reconsideración dentro de los noventa (90) días de haber sido presentada, acogida para Resolución, perderá jurisdicción sobre la misma y el término jurisdiccional de veinte (20) días para solicitar la revisión ante la Comisión empezará a contarse a partir de la expiración de dicho término de noventa (90) días, salvo que por justa causa se prorrogue el término para resolver.

> **Cualquier persona afectada por las órdenes, decisiones, suspensiones o multas impuestas por el Director Ejecutivo, el Jurado Hípico o cualquier otro funcionario autorizado para ello, podrá**

---

[1] Véase, *Moción en Solicitud de Desestimación*, pág. 6. (Énfasis omitido).

**personalmente, o mediante representación legal, solicitar la revisión ante la Comisión**. Las solicitudes de revisión no suspenderán los efectos de las órdenes, decisiones, suspensiones y/o multas mientras se resuelven por la Comisión, salvo que exista justa causa. Disponiéndose que la Comisión, ante una solicitud para tales efectos, para determinar justa causa, escuchará a ambas partes, antes de dejar en suspenso cualquier orden, decisión, suspensión o multa impuesta por el Director Ejecutivo, el Jurado Hípico o cualquier otro funcionario autorizado para ello. En casos de multa, la persona castigada no podrá inscribir, entrenar, cuidar ni montar caballos a menos que deposite en la Oficina del Director Ejecutivo el importe de la multa, el cual le será devuelto, de serle favorable la Resolución de la Comisión. Toda solicitud de Revisión Administrativa deberá presentarse en la Secretar[í]a de la Comisión dentro del término jurisdiccional de 20 días a partir de la notificación de la Orden o Resolución. (Énfasis nuestro).[2]

En consecuencia, contrario a lo interpretado por la Mayoría de este Panel, cuando el Artículo 3.41 del citado Reglamento dispone que, previo a la presentación del recurso ante nos, se requiere que la parte recurrente "haya agotado todos los remedios administrativos", se refiere a la solicitud de revisión ante la Junta de Comisionados, no a la moción de reconsideración; pues esta última no es exigible para nosotros poder ejercer nuestra jurisdicción, más la primera sí.

Por todo lo antes, respetuosamente concurro con el dictamen emitido.

Waleska Aldebol Mora
Juez de Apelaciones

---

[2] Véase, Exhibit 1 del recurso, págs. 8-9.