Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| ALIANZA MUNICIPAL DE SERVICIOS INTEGRADOS, INC.<br><br>*Apelante*<br><br>v.<br><br>OFICINA DE ÉTICA GUBERNAMENTAL DE PUERTO RICO<br><br>*Apelado* | KLAN202400487 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2023CV03866 (803)<br><br>Sobre:<br>Injunction (Entredicho Provisional, Injunction Preliminar y Permanente) y otros |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a <u>17</u> de octubre de 2024.

Comparece la Alianza Municipal de Servicios Integrados, Inc. (parte apelante o la AMSI) mediante recurso de *Apelación* y nos solicita que revisemos la *Sentencia*[1] dictada el 2 de enero de 2024, archivada y notificada el 3 de enero de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario). Mediante el referido dictamen, el TPI desestimó la causa de acción presentada por la parte apelante.

Por los fundamentos que expondremos a continuación, **confirmamos** la *Sentencia* impugnada, por otro fundamento.

**I.**

Según surge del expediente ante nuestra consideración, el 15 de noviembre de 2021, la AMSI solicitó una consulta[2] a la Oficina de Ética Gubernamental de Puerto Rico (parte apelada o la OEG), respecto a la aplicabilidad de ciertos requisitos exigidos por la Ley

---

[1] Apéndice del recurso, págs. 131-143.
[2] Apéndice del recurso, págs. 27-30.

de Ética Gubernamental de Puerto Rico, Ley Núm. 1 de 3 de enero de 2012, según enmendada (Ley Núm. 1-2012), para con sus empleados. En específico, requirió que se le orientara sobre si sus empleados estaban exentos de cumplir con la rendición de informes financieros y la participación de adiestramientos sobre ética.

Para apoyar su consulta, la AMSI explicó que era una corporación privada sin fines de lucro, dedicada a la administración y manejo de fondos públicos para la implementación de programas subsidiados por la *Workforce Innovation and Opportunity Act*, 29 U.S.C. sec. 2801, *et seq*, (WIOA, por sus siglas en inglés). Adujo que su creación surgió con el propósito de optimizar los servicios ofrecidos por el antes Consorcio de Caguas-Guayama. Añadió que trabajaba en conjunto con la Junta de Alcaldes ("Policy Committee"), la cual se encargaba de la implementación de la política pública de la corporación.

A tenor, manifestó que contrario a la definición que dispone la Ley Núm. 1-2012, *supra*, sobre un "servidor público"[3], sus empleados no formulaban política pública de ninguna manera, por lo que no podían considerarse como tal. Al entender que no caían bajo dicha definición, la AMSI sostuvo que estos quedaban exentos de presentar informes financieros y tomar adiestramientos sobre ética, según lo exige la Ley Núm. 1-2012, *supra*.

En respuesta a la consulta, el 16 de febrero de 2022, la OEG remitió una carta[4] a la parte apelante. En primer lugar, precisó que la AMSI era considerada una agencia, por lo que le era de aplicación las disposiciones de la Ley Núm. 1-2012, *supra*. Detalló que, aun

---

[3] El Artículo 1.2 de la Ley Núm. 1-2012, *supra*, en su inciso gg, define servidor público como la "persona en el Gobierno que interviene en la formulación e implantación de la política pública o no, aunque desempeñe su encomienda permanente o temporalmente, con o sin remuneración. También, incluye al contratista independiente cuyo contrato equivale a un puesto o cargo, o que entre sus responsabilidades está la de intervenir directamente en la formulación e implantación de la política pública". 3 LPRA sec. 1854.

[4] Apéndice del recurso, págs. 31-35.

cuando la AMSI se encontraba organizada como una corporación sin fines de lucro, esta administraba fondos públicos, por lo que sus funciones estaban revestidas de un alto interés público.

En segundo lugar, concluyó que los empleados sí venían obligados a cumplir con las disposiciones de la Ley Núm. 1-2012, *supra*. Adujo que la definición provista en la referida ley expresaba manifiestamente que se consideraba como servidor público tanto a aquel que intervenía en la formulación e implementación de política pública, como al que no. De modo que, el que los empleados de la AMSI no formularan política pública no los descalificaba como servidores públicos para propósitos de la referida Ley.

El 7 de noviembre de 2022, la parte apelante replicó la misiva recibida[5] reafirmando su postura sobre la exención de sus empleados con las disposiciones de la Ley Núm. 1-2012, *supra*. Insistió en que estos no cumplían siquiera con el primer requisito del concepto de "servidor público" consignado en la referida Ley Núm. 1-2012, *supra*. De otro lado, adujo que para efectos patrono-laborales, la AMSI era una empresa privada no gubernamental, por lo que tampoco podía considerarse como una agencia de gobierno. Aclaró que, no solo manejaba fondos públicos, sino que también administraba fondos privados. Asimismo, expresó que, si bien inicialmente fue un consorcio municipal, con el tiempo se apartó de ello, y evolucionó a ser una corporación privada sin fines de lucro.

El 28 de diciembre de 2022, la OEG remitió una segunda comunicación[6] a la AMSI, en la que acogió la carta reseñada en el párrafo que antecede como una solicitud de reconsideración. Tras evaluar la misma, la parte apelada se reiteró en su determinación previa.

---

[5] Apéndice del recurso, págs. 36-39.
[6] Apéndice del recurso, págs. 40-41.

Posteriormente, surge del expediente que el 25 de abril de 2023, la OEG emitió una *Orden*[7] a la AMSI. De conformidad a esta, el 17 de enero de 2023, la OEG le habría requerido a la AMSI un listado de las personas obligadas a rendir informes financieros, y a la fecha, no había cumplido. A esos efectos, la parte apelada le concedió a la AMSI un término perentorio de tres (3) días, hasta el 28 de abril de 2023, para que sometiera la información solicitada. La OEG advirtió a la AMSI que el incumplimiento de lo ordenado conllevaría la presentación de una petición ante el foro de instancia, para obligar su ejecución.

En desacuerdo, el 1 de mayo de 2023, la AMSI incoó *Demanda Jurada*[8] sobre solicitud de sentencia declaratoria, interdicto preliminar e interdicto permanente, en contra de la OEG. En esencia, la AMSI hizo hincapié en que era una corporación privada sin fines de lucro, y que sus empleados no intervenían en la formulación de política pública. Subrayó que estos últimos eran empleados privados y no cumplían con la definición de "servidor público", según la define la Ley Núm. 1-2012, *supra.*

En arreglo a ello, la parte apelante solicitó: (i) que se dictara sentencia declaratoria promulgando que sus empleados no eran servidores públicos, según la Ley Núm. 1-2012, *supra,* por lo que no le eran de aplicación las disposiciones de la referida Ley; (ii) que se emitiera una orden de cese y desista para que la OEG dejara de exigir a la AMSI el cumplimiento con las disposiciones de la Ley Núm. 1-2012, *supra,* específicamente, con los adiestramientos en materia de ética y los informes financieros; (iii) la expedición de un interdicto preliminar y permanente para prohibirle a la OEG ponerse en contacto con la AMSI para exigir el cumplimiento de los requisitos de la Ley Núm. 1-2012, *supra;* (iv) que se mantuviera en suspenso

---

[7] Apéndice del recurso, págs. 42-43.
[8] Apéndice del recurso, págs. 1-43.

la *Orden* emitida el 25 de abril de 2023 por la OEG y, (v) la imposición de costas y honorarios de abogados[9].

Tras varias incidencias procesales, el 17 de julio de 2023, la OEG presentó *Moción de Desestimación*[10]. A través de esta, reprodujo sus alegaciones en cuanto a que la AMSI era una entidad que llevaba a cabo funciones de alto interés público, por lo que se le consideraba una agencia, por consiguiente, le eran de aplicación las disposiciones de la Ley Núm. 1-2012, *supra.* Del mismo modo, recalcó que los empleados de la AMSI sí eran servidores públicos y venían obligados a tomar los adiestramientos en materia de ética y a someter informes financieros.

Por otro lado, sostuvo que la AMSI carecía de legitimación activa para presentar la demanda, por lo que el foro de instancia carecía de jurisdicción. En resumidas cuentas, adujo que no existía una determinación final por parte de la agencia que permitiera a la AMSI demostrar el cumplimiento de los criterios exigidos en nuestro ordenamiento jurídico para presentar una acción ante el Tribunal. Adujo que el daño alegado por la AMSI se ceñía a la advertencia realizada por la OEG al no cumplir con la entrega del listado requerido. Manifestó, además, que el remedio adecuado en ley era la culminación del trámite administrativo en curso, el cual se ventilaba ante el Área de Auditoría de Informes Financieros (AAIF) de la agencia. A tenor, sostuvo que la concesión de los remedios solicitados provocaría un pronunciamiento prematuro por parte del foro de instancia.

---

[9] Hacemos constar que el mismo 1 de mayo de 2023, el foro primario emitió una *Orden* por conducto del juez, Hon. Anthony Cuevas Ramos, en la que dispuso de la causa de acción de interdicto bajo la Regla 57 de las de Procedimiento Civil, por entender que no existían asuntos que la Sala de Recursos Extraordinarios debiera atender. Del expediente ante nos no surge que la AMSI haya recurrido de dicha *Orden*, así como tampoco surge del Sistema Unificado de Manejo y Administración de Casos (SUMAC). Véase, entrada número 3 del expediente electrónico en el SUMAC.

[10] Apéndice del recurso, págs. 45-62.

El 7 de septiembre de 2023, la parte apelante se opuso mediante *Oposición a Moción de Desestimación*[11]. De entrada, sostuvo que la AMSI sí tenía una causa de acción válida para la cual el tribunal primario tenía jurisdicción. Indicó que, como una corporación sin fines de lucro, era precisamente dicho tribunal el foro indicado para dilucidar la controversia. Adujo también, que la AMSI no se encontraba en un procedimiento administrativo alguno ante la AAIF o cualquier otro departamento dentro de la OEG, por lo que claramente no existía determinación final respecto a la controversia. Por otro lado, precisó que aun cuando la OEG tuviese jurisdicción sobre la AMSI, ni la Ley Núm. 1-2012, *supra*, ni los reglamentos de la OEG proveían remedio alguno para resolver la controversia.

Así las cosas, el 25 de octubre de 2023, el foro de instancia celebró una vista argumentativa[12]. Según surge de la transcripción de la prueba oral[13], las partes aclararon una serie de dudas al Tribunal, las cuales versaron sobre si la AMSI podía considerarse como una corporación especial para el desarrollo municipal, según lo define la Ley Núm. 1-2012, *supra*; y sobre el uso de fondos federales por la AMSI, para la implementación de política pública.

Atendidas las posturas de las partes, el 2 de enero de 2024, notificada al próximo día, el foro primario emitió *Sentencia*[14] declarando Con Lugar la moción dispositiva presentada por la OEG. En esta, concluyó que la Ley Núm. 1-2012, *supra*, establecía un trámite investigativo, adjudicativo y de revisión judicial que no había sido agotado por la AMSI. Consecuentemente, determinó que la OEG contaba con un procedimiento para entender en la controversia sin que el Tribunal entrara en los méritos en ese momento. De otro lado,

---

[11] Apéndice del recurso, págs. 64-73.
[12] Véase, entradas número 20 y 23 del expediente electrónico en el SUMAC.
[13] Apéndice del recurso, págs. 78-129.
[14] Apéndice del recurso, págs. 131-143.

precisó que el TPI no estaba en posición de preterir el trámite ante la agencia, puesto que no se estaba ante un caso claro de falta de jurisdicción, según lo establece la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG)[15]. Finalmente, destacó que la AMSI contaba con los remedios de revisión judicial provistos por la Ley Núm. 1-2012, *supra*, y la LPAUG, en caso de no estar de acuerdo con la determinación final.

Insatisfecha, el 18 de enero de 2024, la parte apelante presentó *Moción de Reconsideración*[16]. En esencia, reafirmó los planteamientos esbozados en sus escritos anteriores y llamó a la atención el caso de *Crespo Claudio v. O.E.G.*, 173 DPR 804 (2008), por entender que se trataba de una controversia idéntica a la que aquí nos ocupa. Sobre este, puntualizó que el Tribunal Supremo había resuelto que una opinión emitida por la OEG, interpretando alguna ley, no podía ser considerada como un dictamen final de un procedimiento adjudicativo sujeto a revisión judicial por este foro apelativo. Precisó que, de conformidad a la opinión del alto foro, el mecanismo de consulta no constituía un procedimiento adjudicativo de la OEG, sino que se hacía disponible para que la agencia educara sobre las normas éticas enunciadas en la Ley Núm. 1-2012, *supra*.

El 12 de febrero de 2024, la parte apelada instó *Oposición a "Moción de Reconsideración"*[17]. La OEG insistió en que la parte apelante se encontraba ante un proceso investigativo y de adjudicación ante la agencia, y que el caso no era uno de clara falta de jurisdicción. Sobre la analogía que realizó la AMSI con el caso de *Crespo Claudio v. O.E.G., supra*, sostuvo que nada de lo allí resuelto contradecía la *Sentencia* recurrida, toda vez que ni el Tribunal ni la

---

[15] Sección 4.3 de la LPAUG, 3 LPRA sec. 9673.
[16] Apéndice del recurso, págs. 145-165.
[17] Apéndice del recurso, págs. 167-172.

OEG argüían que la opinión emitida constituía una orden o resolución final de la agencia.

El 6 de marzo de 2024, la AMSI presentó *Réplica a Moción en Oposición a Reconsideración (Legajo Núm. 27)*[18]. Posteriormente, el 3 de abril de 2024, la parte apelada instó *Dúplica a "Réplica a Oposición a Moción de Reconsideración…"*[19]. Luego, el 12 de abril de 2024, notificada el 16 de abril de 2024, el foro primario dictó una *Resolución*[20] mediante la cual declaró No Ha Lugar la moción de reconsideración presentada por la parte apelante[21].

Aun en desacuerdo, el 16 de mayo de 2024, la AMSI acudió ante nos mediante el recurso de epígrafe, en el que esbozó los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al declararse sin jurisdicción para entender la controversia medular del pleito, siendo que se declare si los empleados de AMSI son o no empleados públicos bajo la definición de la Ley 1-2012 y sujetos a la jurisdicción de la OEG, cuando no existe remedio administrativo disponible que atienda la controversia de derecho.

> Erró el Tribunal de Primera Instancia al determinar que el intercambio de cartas habido entre AMSI y la OEG constituía un procedimiento administrativo bajo el crisol de la Ley 1-2012 y la Ley de Procedimiento Administrativo Uniforme ("LPAU[G]"), descartando de plano lo establecido por el Tribunal Supremo en <u>Crespo Claudio v. Oficina de Ética Gubernamental</u>, 173 D.P.R. 804 (2008).

El 21 de mayo de 2024, concedimos término a la parte apelada para expresar su posición. Oportunamente, el 14 de junio de 2024, la OEG compareció mediante *Alegato en Oposición de la Parte Apelada Oficina de Ética Gubernamental.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver la controversia ante nuestra consideración.

---

[18] Apéndice del recurso, págs. 174-182.
[19] Apéndice del recurso, págs. 184-190.
[20] Apéndice del recurso, págs. 191-192.
[21] Hacemos constar que, el 18 de abril de 2024, el foro primario emitió una *Sentencia Enmendada*, a los fines de señalar correctamente la parte que presentó el argumento del caso *Crespo Claudio v. O.E.G.*, *supra*. La *Sentencia Enmendada* fue notificada el 19 de abril de 2024. Véase, apéndice del recurso, págs. 193-194.

**II.**

**-A-**

Es norma de derecho conocida que una agencia administrativa debe salvaguardar a las partes el debido proceso de ley. Así pues, conforme al procedimiento del que se trate depende las salvaguardas reglamentarias.

En todo procedimiento adjudicativo formal bajo la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG)[22], las agencias administrativas tienen la obligación de reconocer y salvaguardar el debido proceso de ley que le asiste a las partes, lo cual, entre otros, incluye **(a) el derecho a ser notificado oportunamente de los cargos, querellas o reclamos en su contra, así como (b) derecho a presentar evidencia, (c) derecho a una adjudicación imparcial, y (d) derecho a que la decisión sea basada en el expediente**[23].

Para que se activen las protecciones que le asisten a una parte que podría verse afectada por una acción administrativa de tipo adjudicativa, primero tiene que iniciarse el procedimiento en la agencia en contra de una parte mediante la notificación de una querella. Según la LPAUG, excepto en los casos en los que una ley disponga lo contrario, "el procedimiento adjudicativo ante una agencia podrá iniciarse por la propia agencia o con la presentación de una querella, solicitud o petición, ya sea personalmente o mediante comunicación por escrito, en el término que establezca la ley o el reglamento, con relación a un asunto que esté bajo la jurisdicción de la agencia"[24].

---

[22] 3 LPRA secc. 9641.
[23] *Íd.*
[24] 3 LPRA secc. 9642, véase *Reglamento Núm. 8231, Reglamento sobre asuntos programáticos de la Oficina de Ética Gubernamental de Puerto Rico.*

**-B-**

El Tribunal Supremo ha reconocido el trámite de consulta como un mecanismo disponible a la agencia para consignar su interpretación de la ley habilitadora. En lo específico, en *Crespo Claudio v. O.E.G.*, *supra*, el alto foro precisó lo siguiente:

> Este mecanismo de consulta representa un vehículo informativo mediante el cual la Oficina de Ética Gubernamental, previa solicitud, orienta a las personas sujetas a su jurisdicción sobre asuntos específicos o generales que se le consulten. Éste constituye meramente un mecanismo adicional que tiene la agencia disponible para hacer constar su interpretación de la ley habilitadora[25].

Conforme con esos principios, los procesos del Director Ejecutivo de la OEG para proveer información y promover la difusión, compresión y educación de las normas de ética contenidas en la Ley de Ética Gubernamental, se regirá por el *Reglamento de Opiniones y Consultas de la Ley de Ética Gubernamental*. Respecto a las consultas, se regirá por el Artículo IV. Pueden solicitar Opiniones y consultas:

> Cualquier agencia ejecutiva o persona podrá solicitar una opinión escrita con respecto a un asunto específico que le afecte.
>
> Cuando la solicitud sea de una agencia ejecutiva, la misma vendrá acompañada de un memorando de derecho expresando su posición sobre el asunto.
>
> La Oficina no atenderá ninguna solicitud presentada por un abogado en su práctica privada en representación de una agencia, salvo ésta acredite tal necesidad.
>
> Un abogado en su práctica privada podrá solicitar una opinión escrita en representación de una persona, en cuyo caso incluirá una evaluación legal del asunto.
>
> En caso de cualquier otra persona, el Director podrá, a su discreción, requerir al solicitante una evaluación del asunto.
>
> La Oficina atenderá toda consulta telefónica o verbal en cualquier momento, a manera de una orientación general.
>
> **No obstante, lo único que se considera como posición formal oficial de la Oficina es la opinión escrita por el Director**.

---

[25] *Crespo Claudio v. O.E.G.*, *supra*, pág. 819.

**-C-**

Es norma reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados[26]. Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia[27].

A su vez, el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas.

Igualmente, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas"[28]. Es, por tanto, que la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron[29].

Así pues, basados en la deferencia y razonabilidad, los tribunales no debemos intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad"[30].

**-D-**

La doctrina de agotamiento de remedios administrativos es una norma de auto-limitación judicial que determina la etapa en que

---

[26] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012).
[27] *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013).
[28] *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006).
[29] *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).
[30] *González Segarra et al. v. CFSE, supra*, 277.

un tribunal de justicia debe intervenir en una controversia que se ha presentado inicialmente ante un foro administrativo[31]. El propósito de la doctrina es determinar la etapa en la que el litigante puede acudir al tribunal, de manera que se evite una intervención judicial innecesaria y a destiempo, que interfiera con el cauce y desenlace final del proceso administrativo[32]. Así pues, mediante la mencionada doctrina, los tribunales discrecionalmente se abstienen de revisar una actuación de una agencia hasta tanto la persona afectada agote todos los remedios administrativos, de manera que la decisión administrativa refleje la decisión final de la agencia[33].

La posposición de la intervención judicial permite que la agencia desarrolle un historial completo del asunto ante su consideración, fomenta que ese organismo utilice su conocimiento especializado para adoptar las medidas correspondientes conforme a la política pública y aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos[34]. También facilita la revisión judicial, asegurando que los tribunales tengan información más precisa sobre los fundamentos de la actuación gubernamental[35].

Como regla general, el agotamiento de remedios se invoca cuando una parte ante el foro administrativo solicita la intervención judicial antes de consumar el procedimiento administrativo[36]. Esto es, cuando una parte que instó o tiene instada una acción ante una agencia u organismo administrativo, acude ante el Tribunal sin antes haber completado el trámite administrativo disponible[37]. De

---

[31] *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 851 (2008).

[32] *AAA v. UIA*, 199 DPR 638, 656 (2018); *Procuradora Paciente v. MCS*, 163 DPR 21, 35 (2004); *Guadalupe v. Saldaña, Pres. U.P.R.*, 133 DPR 42, 49 (1993).

[33] *Asoc. Pesc. Pta. Figueras v. Pto. del Rey*, 155 DPR 906, 916 (2001); *Guadalupe v. Saldaña, Pres. U.P.R., supra*.

[34] *Procuradora Paciente v. MCS, supra*, citando a *Rivera v. E.L.A.*, 121 DPR 582, 595 (1988); *Guadalupe v. Saldaña, Pres. U.P.R., supra*.

[35] *Rivera v. E.L.A., supra*.

[36] *S.L.G. Flores, Jiménez v Colberg, supra*.

[37] *Ortiz v. Panel F.E.I.*, 155 DPR 219, 242 (2001).

manera que, "el agotamiento de remedios presupone la existencia de un procedimiento administrativo que comenzó pero que no finalizó", debido a que la parte concernida recurrió al foro judicial previo a que dicho procedimiento culminara[38].

En consonancia con lo anteriormente expuesto, la sección 1.2 de la LPAUG, *supra*, dispone que el procedimiento administrativo supone, entre otros, la adjudicación formal de toda controversia o planteamiento ante la consideración de una agencia[39]. Al mismo tiempo, define la adjudicación como el pronunciamiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que correspondan a una parte[40].

**-E-**

La sentencia declaratoria es un "mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita"[41].

Pese a que la sentencia declaratoria puede ser presentada, aunque se haya instado o pueda instarse otro remedio, "[c]omo [regla] general, [este recurso] **no est[á] disponible** para **revisar decisiones administrativas** [...], ya que se trata de un procedimiento ordinario"[42].

Por tanto, se ha establecido que la sentencia declaratoria no puede ser utilizada cuando el legislador ha desarrollado un procedimiento administrativo específico para atender el asunto en controversia. Cónsono con ello, el profesor Demetrio Fernández Quiñones ha expresado que:

---

[38] *Asoc. de Pesc. Pta. Figueras v. Pto. del Rey, supra*, pág. 918, citando a *Mun. de Caguas v. AT&T*, 154 DPR 401, 408-409 (2001).

[39] 3 LPRA sec. 9603(l).

[40] 3 LPRA sec. 9603(b); *Crespo Claudio v. O.E.G., supra*, pág. 816.

[41] *Beltrán Cintrón v. Estado Libre Asociado*, 204 DPR 89, 109 (2020), citando a *Senado de PR v. ELA*, 203 DPR 62, 71 (2019), que a su vez cita a *Alcalde Guayama v. ELA*, 192 DPR 329, 333 (2015).

[42] *Beltrán Cintrón v. Estado Libre Asociado, supra*, pág. 109, citando a J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Publicaciones JTS, 2011, T. V, pág. 1793.

> La sentencia declaratoria es improcedente en todo caso en que exista un procedimiento administrativo específico. Dos razones existen para solicitar la desestimación del recurso de sentencia declaratoria en el contexto del procedimiento administrativo. Primero, la falta de jurisdicción porque el legislador ha especificado un procedimiento de forma terminante y exclusivo. Segundo, la posibilidad de que no se hayan agotado los remedios administrativos[43].

**III.**

Como cuestión de umbral, nos corresponde determinar si, a la luz de la normativa antes expuesta, debemos atender la controversia presentada por AMSI.

En la Sentencia apelada, el foro primario determinó que la OEG solicitó la desestimación de la Demanda Jurada incoada en su contra al amparo de la Regla 10.2 de Procedimiento Civil. Primeramente, la OEG sostuvo que procede la desestimación de la demanda que presentó la AMSI debido a que el Tribunal carece de jurisdicción. La OEG adujo que, a la fecha de presentación de la reclamación y los subsiguientes escritos dispositivos, el procedimiento administrativo ante el AAIF de la OEG no había culminado. Así las cosas, la OEG sostuvo que, conforme la doctrina de agotamiento de remedios, el procedimiento ante sí y su posible revisión subsiguiente ante el Tribunal de Apelaciones constituye la vía apropiada para dilucidar las controversias de la demanda de epígrafe, incluyendo los argumentos de la parte apelante sobre su negación a cumplir con los requerimientos de la OEG. De igual forma y en oposición, la AMSI adujo que, según surge de la Demanda Jurada, es una corporación privada sin fines de lucro, así como sus empleados se rigen por disposiciones laborales exclusivas del sector privado, por lo que la OEG no tiene jurisdicción administrativa sobre ella. En la alternativa, arguyó que actualmente ante la OEG no existe un procedimiento administrativo, por lo cual no tenía que agotar remedios administrativos.

---

[43] *Beltrán Cintrón v. Estado Libre Asociado*, 204 DPR, a las págs. 109-110, citando a Fernández Quiñones, *op. cit.*, págs. 747–748.

Ante esto, corresponde resolver primeramente si, bajo imperativo jurisdiccional, **este Tribunal debe abstenerse de intervenir en esta controversia hasta tanto la AMSI agote todos los remedios administrativos ante la OEG, como concluye el TPI, o si debemos intervenir para aclarar la normativa jurídica sobre si aun cuando no se ha iniciado un proceso adjudicativo, la OEG puede emitir la orden del 25 de abril de 2023**.

Según discutido, conforme a la doctrina de agotamiento de remedios, la parte que desee obtener un remedio en una agencia debe utilizar todos los medios administrativos disponibles previo a acudir a un tribunal[44]. **<u>Por tal, es menester que exista alguna fase del procedimiento administrativo que la parte concernida deba agotar</u>**[45].

Es decir, la AMSI alegó que no existe actualmente un proceso administrativo pendiente ante la OEG que resolver, de sus propias alegaciones se desprende que esta le remitió una carta a la OEG (consulta) el 15 de noviembre de 2021, en la cual le solicitó que se expresara en cuanto a si sus empleados estaban exentos de cumplir con los requerimientos. Ante esto, el 16 de febrero de 2022, la OEG contestó a la AMSI su consulta, y esta interpretó las definiciones de "agencia" y "servidor público" de la Ley Núm. 1-2012, *supra*, y dispuso lo siguiente:

> *Nótese que de la definición antes transcrita se desprende que para propósitos de la LOOEG un servidor público es aquel que interviene o no en la formulación e implantación de política pública, ya sea que su encomienda sea permanente o temporera o si recibe o no paga por su trabajo. Es decir, que su interpretación de esta definición pasa por alto que esta expresa, de **manera inequívoca,** que las circunstancias que usted aduce referente a que como sus empleados no formulan ni implantan política pública no son servidores públicos, no es correcta. El que no formulen ni implanten política pública no descalifica a los empleados de la AMSI como servidores públicos para propósitos de la LOOEG. Siendo así, **los servidores públicos de la AMSI están obligados a cumplir con todas las disposiciones de la LOOEG, lo que incluye tomar cada dos años un mínimo de veinte horas***

---

[44] *AAA v. UIA, supra*, pág. 913.
[45] *Guzmán y otros v. E.L.A., supra*, pág. 712.

***de adiestramientos en materia de ética y someter
informes financieros***[46].

En ese sentido, la OEG razonó que los empleados de la AMSI
debían cumplir con los requerimientos de la OEG. No obstante,
insatisfecha con la opinión del Director Ejecutivo de la OEG, el 7 de
noviembre de 2022, la AMSI remitió una carta, en la cual solicitó
reconsideración[47]. Por su parte, el 28 de diciembre de 2022[48], la
OEG sostuvo su posición en cuanto a que a los empleados de la
AMSI les aplica las disposiciones de la Ley Núm. 1-2012, *supra.* Es
decir, las comunicaciones emitidas por la OEG constituyen la
posición formal y oficial de la OEG; significa, que es la opinión
escrita por el Director Ejecutivo conforme al *Reglamento de
Opiniones y Consultas de la Ley de Ética Gubernamental.*

El 25 de abril de 2023 y, luego de varios requerimientos por
parte de la OEG, esta emitió la Orden APAAIF: 2023-04[49]. Según
sostuvo la parte apelante, la OEG le requirió que "produjera
referente a la sumisión de informes financieros por los empleados
de la AMSI a la OEG", además de que incluyó una advertencia de
que "el incumplimiento con la orden conllevaría la presentación de
una petición en el Tribunal de Primera Instancia para que se obligue
el cumplimiento de esta orden, bajo apercibimiento de desacato".

Según se discutió, la Sección 4.2 de la LPAUG, *supra,* provee
el derecho a la parte adversamente afectada por una orden o
resolución final de una agencia que haya agotado todos los remedios
presentar una solicitud de revisión ante el Tribunal de Apelaciones.
No obstante, la Orden del 25 de abril de 2023, aquí impugnada, no
constituye una determinación final ni una resolución interlocutoria
subsumida en un proceso administrativo adjudicativo.

---

[46] Apéndice del recurso, págs. 31-35.
[47] Apéndice del recurso, págs. 36-39.
[48] Apéndice del recurso, págs. 40-41.
[49] Apéndice del recurso, pág. 42.

Aun cuando la OEG razona que procede la desestimación de la Demanda Jurada incoada en su contra al amparo de la Regla 10.2 de Procedimiento Civil, debido a que el Tribunal carece de jurisdicción, también adujo que, a la fecha de presentación de la reclamación y los subsiguientes escritos dispositivos, el procedimiento administrativo ante el AAIF de la OEG no había culminado.

Según expuesto, nuestro ordenamiento jurídico dispone claramente cuando procede la intervención judicial en un pleito que se ha presentado inicialmente ante un foro administrativo. Así pues, de conformidad a la doctrina de agotamiento de remedios, un Tribunal debe abstenerse de revisar la actuación de una agencia **hasta tanto la persona afectada agote todos los remedios administrativos disponibles**[50]. Esto es, cuando una persona desea obtener un remedio, y acude primero a la agencia con jurisdicción para ello, esta vendrá obligada a utilizar todos los recursos que estén disponibles administrativamente[51]. Por el contrario, si una parte solicita la intervención judicial antes de consumar el procedimiento administrativo, podrá invocarse la doctrina de agotamiento de remedios[52].

Como norma general, nos corresponde abstenernos de resolver este tipo de dictamen. **No obstante, la naturaleza de la controversia traída ante nuestra consideración –si existe o no un procedimiento adjudicativo administrativo– nos permite acoger y atender excepcionalmente el planteamiento traído por la AMSI**.

La jurisprudencia antes citada, así como la doctrina de economía procesal y, en particular, el principio de la solución justa,

---

[50] *Asoc. Pesc. Pta. Figueras v. Pto. del Rey, supra*; *Guadalupe v. Saldaña, Pres. U.P.R., supra*.
[51] *Ortiz v. Panel F.E.I., supra*, pág. 241, citando a *Colón v. Méndez, Dpto. Recursos Naturales*, 130 DPR 433, 442-443 (1992).
[52] *S.L.G. Flores-Jiménez v. Colberg, supra*.

rápida y económica de las controversias sobre el que se apuntala el propio derecho administrativo, aconsejan nuestra temprana y oportuna intervención con el asunto jurisdiccional interlocutorio que se nos plantea. Esta excepción está anclada en evidentes consideraciones de prudencia y conveniencia procesal. Como ha dicho reiteradamente la jurisprudencia, los asuntos jurisdiccionales, por ser atinentes a la autoridad del ente adjudicador para intervenir y disponer de una controversia, deben atenderse prioritariamente para evitar pérdida de tiempo de recursos[53]. Si la entidad administrativa carece de jurisdicción cualquier dictamen que emita será radicalmente nulo. De ahí la necesidad de intervenir tempranamente en asuntos de esta naturaleza en beneficio de las propias partes y de la agencia. Sobre esa base y consideraciones, este Tribunal intervendrá de manera excepcional, para atender y disponer sobre el cuestionamiento de que la OEG no ha comenzado la fase adjudicativa y, de ser correcto, cómo esto afecta la determinación del foro primario.

Aclarado el anterior planteamiento, de umbral, y por excepción, nos corresponde entrar a los méritos de la controversia planteada. Iniciaremos con la discusión del segundo error, en el cual la parte apelante aduce que el Tribunal incidió al determinar que el intercambio de cartas habido entre la AMSI y la OEG constituía un procedimiento administrativo bajo el crisol de la Ley 1-2012 y la Ley de Procedimiento Administrativo Uniforme ("LPAU[G]"), descartando de plano lo establecido por el Tribunal Supremo en *Crespo Claudio v. Oficina de Ética Gubernamental,* 173 DPR 804 (2008).

Al revisitar *Crespo Claudio v. Oficina de Ética Gubernamental, supra,* nuestro Alto Foro dispuso lo siguiente:

> Conforme a lo anterior, no podemos endosar la tesis de la Oficina de Ética Gubernamental a los efectos de que, si bien el proceso mediante el cual se emitió la opinión no

---

[53] 3 LPRA sec. 9673.

cumplió con los requisitos de la adjudicación formal, éste puede ser considerado como un proceso de adjudicación informal. **Además de que ya hemos concluido que la opinión en cuestión *no* constituye una determinación adjudicativa, la improcedencia de dicha alegación surge claramente de las propias disposiciones de la LPAU[G] y de la ley orgánica de la agencia.** [Énfasis nuestro].

Nótese que, por un lado, el proceso que nos ocupa no está incluido en el listado de procedimientos informales mencionados en la Sec. 3.1 de la LPAU[G] los cuales, por su naturaleza, están exentos de los requisitos establecidos para la adjudicación formal de controversias, a saber: (1) la notificación oportuna de los cargos, (2) el derecho a presentar evidencia, (3) el derecho a una adjudicación imparcial y (4) el derecho a que la decisión esté fundamentada en el expediente. 3 LPRA sec. 2151.

Además, la Ley de Ética Gubernamental tampoco le confiere naturaleza de procedimiento adjudicativo informal al proceso mediante el cual se emitió la opinión que nos ocupa. La opinión fue emitida por la Oficina de Ética Gubernamental en virtud del Art. 2.4 del referido estatuto, el cual le confiere *autoridad para establecer un servicio de opiniones* sobre los asuntos de su incumbencia. En particular, el artículo dispone, en lo pertinente, lo siguiente: El Director [de la Oficina de Ética Gubernamental] tendrá los siguientes deberes y poderes:

[........]

(n) Establecer un servicio de opiniones emitidas sobre los asuntos de su incumbencia que sean de aplicación general o sobre asuntos específicos que se le consulten. Las opiniones del Director deberán ser recopiladas, publicadas y estar disponibles tanto para los organismos de gobierno así como para el público en general. 3 LPRA sec. 1814(n).

En conformidad con la autoridad legislativa así conferida, la Oficina de Ética Gubernamental promulgó el Reglamento de Opiniones y Consultas de la Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico. El propósito del cuerpo reglamentario no es otro que hacer viable que el Director Ejecutivo pueda cumplir con su "deber de interpretar, aplicar y hacer cumplir las disposiciones de la Ley de Ética Gubernamental y sus Reglamentos". *Íd.*, pág. 1. Igualmente, mediante éste se procura que dicho funcionario cumpla con la obligación de proveer *información y promover la difusión, comprensión y educación de las normas éticas* contenidas en la Ley de Ética Gubernamental. Véase Art. II del Reglamento de Opiniones y Consultas de la Ley de Ética Gubernamental, pág. 1.

Tal como se desprende de la disposición transcrita de la Ley de Ética Gubernamental y de las particularidades del Reglamento de Opiniones y Consultas, el proceso mediante el cual la Oficina de Ética Gubernamental emitió la Opinión Núm. OPC-04-002 constituye un *mecanismo de consultas* disponible para que la agencia eduque sobre las normas éticas contenidas en la Ley de Ética Gubernamental. Este mecanismo de consulta representa un vehículo *informativo* mediante el cual la Oficina de Ética Gubernamental, previa solicitud, orienta a las personas sujetas a su jurisdicción sobre asuntos específicos o generales que se le consulten. Éste constituye meramente un mecanismo adicional que tiene la agencia disponible para hacer constar su interpretación de la ley habilitadora.

Tratándose de una expresión de esa índole, no cabe duda de que la opinión en cuestión constituye, más bien, una *interpretación oficial* de la Oficina de Ética Gubernamental con respecto al alcance de su ley habilitadora. La LPAU[G] define este concepto, precisamente, como una interpretación

> formal de la agencia sobre la ley que está bajo su administración, que se expide a solicitud de parte o a iniciativa propia y que se hace formar parte del repertorio formal de interpretaciones de la agencia. 3 LPRA sec. 2101(d). Ciertamente, esta opinión cumple con cada uno de esos criterios.
>
> Por un lado, la interpretación realizada por la agencia sobre su ley orgánica surgió en esta ocasión a solicitud de parte. A su vez, según el texto de la opinión, la interpretación allí expresada constituye la posición formal y oficial de la agencia. Finalmente, según lo dispuesto en el Art. 2.4 de la Ley de Ética Gubernamental, dicha opinión debe ser recopilada y publicada para beneficio de la persona que solicitó la consulta y para el público en general.

Al releer la opinión emitida por nuestro Tribunal Supremo en *Crespo Claudio v. Oficina de Ética Gubernamental, supra,* colegimos que el segundo error fue cometido. Aun cuando determinamos que el intercambio de cartas habido entre AMSI y la OEG no constituye un procedimiento adjudicativo administrativo bajo el crisol de LPAUG[54], concluimos de igual forma que el foro primario, que no tenemos jurisdicción para atender el caso de autos, porque desde nuestro punto de análisis jurídico, aún **falta por iniciar y cumplir con las fases del procedimiento administrativo adjudicativo**[55]. Lo que implica que hasta que la OEG no inicie el proceso administrativo adjudicativo, la AMSI no podrá agotar los remedios administrativos y esta Curia no podrá revisar una decisión administrativa que aún no está disponible. Aun con la diferencia de fundamento, el resultado es el mismo, pues la Orden del 25 de abril de 2023 es inoficiosa por la imposibilidad de su cumplimiento, debido a que la misma se origina de una consulta y no de un proceso investigativo ni adjudicativo ante la OEG. Por tanto, al ser la Orden inoficiosa, no constituye una resolución u orden final susceptible de revisión judicial.

---

[54] *Crespo Claudio v OEG,* 173 DPR 804 (2008): *Por entender que el proceso mediante el cual* ***se emitió la opinión no constituye propiamente un procedimiento adjudicativo y que, por lo tanto, no puede ser considerada para estos fines una "orden o resolución final",*** *concluimos que el foro apelativo carecía de jurisdicción para revisar su corrección mediante el recurso de revisión judicial.*

[55] *Mun. de Caguas v. AT & T,* 154 DPR 401 (2001).

Referente al primer error, la parte apelante solicita que se declare por medio de una sentencia declaratoria[56] que:

> [...] los empleados de la AMSI no son servidores públicos según definido en la Ley Núm. 1-2012, por lo cual no están bajo la jurisdicción de la OEG y no vienen obligados a cumplir con sus requerimientos[57].

Es un hecho indubitado que la génesis del presente pleito emerge de una solicitud de **consulta** realizada por la AMSI a la OEG, sobre la aplicabilidad de varios requisitos exigidos por la Ley Núm. 1-2012, *supra,* para con sus empleados. Debemos tener presente que la OEG ya activó el *Reglamento de Opiniones y Consultas de la Ley de Ética Gubernamental* al emitir su contestación a la consulta, y esta constituye la posición formal y oficial de la OEG, por lo cual, no es el momento apropiado para que intervengamos en esta controversia, porque aún queda pendiente el proceso adjudicativo ante la consideración de la OEG. Es inevitable concluir que la AMSI recurre al foro judicial sin antes haber completado todo el trámite administrativo disponible cuando se inicie y culmine el proceso adjudicativo. Colegimos que el primer error no fue cometido.

Finalmente, precisamos que nuestra intervención no prejuzga de manera alguna los planteamientos expuestos por las partes ante el foro de instancia.

**IV.**

Por los fundamentos antes expuestos, ***confirmamos*** la *Sentencia* apelada por otro fundamento.

---

[56] *Beltrán Cintrón v. Estado Libre Asociado*, 204 DPR, 89, 109-110 (2020), citando a Fernández Quiñones, *op. cit.*, págs. 747–748: *La sentencia declaratoria es improcedente en todo caso en que exista un procedimiento administrativo específico. Dos razones existen para solicitar la desestimación del recurso de sentencia declaratoria en el contexto del procedimiento administrativo. Primero, la falta de jurisdicción porque el legislador ha especificado un procedimiento de forma terminante y exclusivo. Segundo, la posibilidad de que no se hayan agotado los remedios administrativos.* (Énfasis suplido). Fernández Quiñones, *op. cit.*, págs. 747–748. Véase, además, *Asoc. De Distribuidores v. Admón. de Estabilización*, 81 DPR 212 (1959).

[57] Apelación, pág. 5.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


                          Lcda. Lilia M. Oquendo Solís
                     Secretaria del Tribunal de Apelaciones